**Robert C. SWITZER et al., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Joseph L. SWITZER et al., Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**Nos. 12390, 12391.**

United States Court of Appeals Sixth Circuit.

Oct. 28, 1955.

John D. Steele, Cleveland, Ohio, Sayre, Vail & Steele, Cleveland, Ohio, on the brief, for petitioners.

Stanley P. Wagman, Washington, D. C., H. Brian Holland, Ellis N. Slack, Hilbert P. Zarky, Washington, D. C., on the brief, for respondent.

Before MARTIN, McALLISTER and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Commissioner determined deficiencies in income taxes of the respective petitioners for the years 1949 and 1950. The petitioners did not contest the adjustments on which the deficiencies were determined, but petitioned the Tax Court that overpayments of tax be found based on their mistake in reporting certain payments received by them as income instead of capital gains. The payments in question were made to them during the taxable years by a licensee under a "License

Agreement" covering certain patents in the field of luminescence owned by the petitioners. The Commissioner contended that the payments were royalties taxable as ordinary income rather than payments resulting from the sale of capital assets taxable as long-term capital gains. The Court sustained the Commissioner, which ruling is before us on review.

The written instrument involved, executed July 30, 1946, was styled "Memorandum of License Agreement" and throughout referred to the petitioners, who were the owners of the patents, as "Licensors," and to the corporation, which was the other party to the instrument and was wholly owned by the petitioners, as the "Licensee." It provided for the payment of "royalties" in quarter annual installments at the rate of ten percent of the gross sums invoiced by Licensee for the sale and rental of all licensed products, and for a "minimum royalty" of $4,000 during each quarter year. It also provided that any royalties which the Licensee received under sublicenses thereafter granted should be transferred directly to the Licensors, without any deductions, immediately following receipt thereof, and that the Licensors would reimburse the Licensee, upon Licensee's billing, for expenses incurred by Licensee in collecting sub-license royalties. It further provided— "This agreement is not assignable by Licensee except to successors to substantially the entire business and good will of Licensee and unless so assigned, shall terminate immediately upon the dissolution or bankruptcy of Licensee."

Petitioners' contention that the transaction was essentially an assignment or sale of the licenses to the corporation is based principally upon the following provision in the Agreement: "Licensee is exclusively licensed in the United States and foreign countries to make, use and sell and to grant sub-licenses to make, use and sell products, devices and methods within the scope of all patents * * now owned by Licensors * * *." It has been held that an agreement transferring to another the exclusive right to make, use and sell for the life of the patent constitutes an assignment. Waterman v. MacKenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; Kenyon v. Automatic Instrument Co., 6 Cir., 160 F.2d 878; Kavanagh v. Evans, 6 Cir., 188 F.2d 234. Those cases also point out that whether the instrument constitutes an assignment or a license does not depend upon the name by which it is called, but upon the legal effect of its provisions.

However, it is also the rule that while such words in a license agreement give rise to an assignment of a patent where the document granting such a license is consistent with a present intention by the owner to transfer the patent, they can not be held the equivalent of an assignment where the document itself and the total factual complex surrounding the transaction negatives such a transfer. Although no particular form is required for an assignment, the instrument of transfer must be unambiguous and show a clear and unmistakable intent to part with the patent. Rhodes-Hochriem Mfg. Co. v. International Ticket Scale Corp., D.C.Del., 57 F.2d 713; Eterpen Financiera Sociedad v. United States, 108 F.Supp. 100, 104, 124 Ct.Cl. 20; Six Wheel Corp. v. Sterling Motor Truck Co., 9 Cir., 50 F.2d 568; Oliver v. Rumford Chemical Works, 109 U.S. 75, 3 S.Ct. 61, 27 L.Ed. 862; Bloch v. United States, 2 Cir., 200 F.2d 63, certiorari denied 345 U.S. 935, 73 S.Ct. 796, 97 L.Ed. 1362. See: Federal Laboratories, Inc. v. Commissioner, 8 T.C. 1150, 1156–1157; Griswold v. Dixie Foundry Co., D.C.E.D. Tenn., 79 F.Supp. 79.

In the present case, the petitioners on October 1, 1949 wrote to the Licensee confirming "our earlier understanding that you may institute, prosecute, compromise and defend in your own name legal proceedings which you deem necessary to enforce *our* patents and in the furtherance of the licensing programs under *our* patents" (emphasis added) and agreed to pay the reasonable expenses incurred by the Licensee in so doing.

The petitioners reported the royalties received as ordinary income for the years 1949 and 1950, and paid the taxes thereon. They have since changed their

position and now contend that the payments were long-term capital gains.

The Tax Court carefully considered the stipulated facts in this case in the light of the foregoing principles and pointed out in its opinion the various factors which indicated to it the intent on the part of the petitioners not to transfer an absolute title to the licensee, including the terminology of the instrument, the subsequent conduct of the petitioners in agreeing to bear the cost of litigation and in whose name the litigation should be conducted, and the treatment by the petitioners of the payments as ordinary income in their tax returns as originally filed. It concluded that on the basis of the whole record the petitioners had failed to establish that they intended or accomplished a sale or assignment of the patents in question and that the payments were royalties subject to tax as ordinary income. Such determination involved a factual inference to be reasonably drawn from the basic undisputed facts. Such finding is approved and accepted on this review. Stout v. Commissioner, 6 Cir., 185 F.2d 854.

The judgments of the Tax Court are affirmed.