**MERCK & CO., Inc., Successor by merger to Sharp & Dohme, Incorporated,**

v.

**Francis R. SMITH, Individually and as the former Collector of Internal Revenue for the First District of Pennsylvania.**

**Civ. A. No. 18904.**

United States District Court
E. D. Pennsylvania.
Sept. 9, 1957.

844

Hayward H. Coburn, Drinker, Biddle & Reath, Philadelphia, Pa., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, Benjamin H. Pester, Dept. of Justice, Washington, D. C.,·

Harold K. Wood, U. S. Atty., Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

This action for a refund of income taxes in the amount of $324,033.12 was tried to the Court without a jury upon a stipulation covering all the facts. The question is whether income received by the plaintiff in the form of royalties under an instrument, denominated a license, transferring patent rights was ordinary income or income from the sale of a capital asset.

Whether a transfer of patent rights is an assignment or a mere license is a question which has been before the courts so many times that the legal effect of several of the features of the agreement involved in this case have been pretty well settled.

■ 1. The fact that the parties call an agreement a license and refer to themselves as licensor and licensee and to the payments as royalties, while a relevant consideration, is not controlling and, as a matter of fact, appears to have been given very little weight by the courts. In one case the Court held that a transfer of patent rights was a sale despite the fact that the parties agreed in the instrument of transfer that the transaction not only was to be construed as a license but, specifically, that it was not to be construed as an assignment. Pike v. United States, D.C., 101 F.Supp. 100.

■ 2. The agreement must be construed according to what it does rather than what it says, and if it operates to transfer the grantor's entire title and interest in the patent, it will be held to be an assignment. The monopoly granted by a patent consists of the right to make, use and sell the invention and to exclude all others from so doing. Those rights make up the sum total of what the patentee has and, hence, the grant of an exclusive license (including, as in

this case, the right to exclude the grantor itself) has generally been held to be an assignment or sale, unless a contrary intention appears.

■ 3. Such contrary intention is not to be deduced from the reservation to the grantor of a right of termination in the event of breach or insolvency or certain other conditions. This has been held to be a condition subsequent, not affecting the status of the transaction as an assignment.

■ 4. A provision that the agreement may not be assigned by either party without the consent of the other does not destroy its character as an assignment.

In support of its principal contention, the government cites Judge Lord's decision in American Chemical Paint Company v. Smith, D.C., 131 F.Supp. 734. In that case Judge Lord decided that the instrument of transfer was a license and not an assignment. The rationale of the decision was that there cannot be an assignment of a part of a monopoly and, therefore, since the parties intended to effectuate a transfer of some kind, it could only have been a license agreement. The principle is well established and I am satisfied that the decision is correct, but the present case is easily distinguishable. Judge Lord's opinion notes that the grantor reserved certain specified "uses" and "purposes" of the invention described in each of the two patents involved in the suit, also the right to processes covered by the patents in fields outside the general field specified in the instrument of transfer. There is no suggestion in the opinion that either patent covered more than a single invention so that "when the taxpayer split off the rights which it reserved for itself * * * (the grantee) did not become the *owner* of the patents * * *. Hence, the taxpayer did not convey, nor did it intend to convey the entire monopoly * * *."[1]

---

[1]. It will be noted that in the American Chemical Paint Co. case, supra, the grantor reserved the right to manufacture in the United States and Canada for sale and use in other countries. Of course, it was obvious that the transfer did not convey the entire manufacturing monopoly within the United States.

■ However, a single patent may issue for two or more separate inventions. Special Equipment Co. v. Coe, 324 U.S. 370, 377, 65 S.Ct. 741, 89 L.Ed. 1006. The patent in the present case did. There might be some doubt about that, and it would take expert advice to enlighten me on the question whether more than one invention is involved in the patent but, fortunately, the parties have expressly stipulated that the inventors invented and reduced to practice certain chemical compounds known as sulfonamido pyrimidines and that "2-sulfonamido pyrimidine is one of the members of the class of chemical compounds known as sulfonamido pyrimidines and, as such, is one of the inventions described and claimed generically in said Letters Patent No. 2,407,966".

Now, 2-sulfonamido pyrimidine is the thing which, under the name of sulfadiazine, constitutes the entire subject matter of the agreement of transfer. The grant is of "the exclusive right and license (excluding also Licensor) to practice and to sublicense others to practice the inventions, insofar as they are applicable to sulfadiazine and the preparation thereof and/or processes of making the same * * *." Thus, what is transferred is the entire interest and property of the grantor in one of a plurality of inventions protected by a single patent.

■ It has been held a number of times that a patent monopoly may be divided on a geographical basis and a part limited to a geographical area may be validly assigned. Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923. In United States v. Carruthers, 9 Cir., 219 F.2d 21, it was held that an exclusive license to make, use and sell machinery could be a valid assignment although limited to the only industry in which those rights were of any real value, and in First National Bank of Princeton v. United States, D.C., 136 F.Supp. 818, the Court went further and held that such a grant could be properly limited to making, using and selling toothbrushes although the patent was broad enough to cover most other kinds of brushes.

■ It is not necessary to go so far in the present case. I can see no valid reason why the assignment of the entire patent rights in an invention should be held to be invalid merely because the patent by which the rights are guaranteed protects other separate and distinct, though related, inventions.

The fact that the transferee might be unable to bring suit in his own name seems to me a matter of form rather than of substance, of procedure rather than of right. The fact is that he can bring suit by joining the patentee as an involuntary plaintiff. The name under which the action is captioned would seem to be a purely technical consideration and his right to sue, realistically appraised, is as full and complete as though he were the patentee.

■ The government further argues that the provisions in the agreement relating to foreign patents splits off rights which leave the grant one of less than the entire monopoly. As pointed out previously, a grant of exclusive rights within the United States would constitute an assignment. The rights and duties of the parties with respect to monopolies that may be acquired in foreign countries do nothing to detract from or add to the grant with respect to the United States patent.

I, therefore, conclude that the instrument of transfer involved in this case is an assignment and that the amounts upon which the taxpayer paid income tax were income from the sale of a capital asset.

Judgment for the plaintiff.