261 F.2d 162
 MERCK & CO., Inc., Successor by Merger to Sharp & Dohme, Incorporated,
v.
Francis R. SMITH, Individually and as Former Collector of Internal Revenue for the First District of Pennsylvania, Appellant.
 No. 12599.
 United States Court of Appeals Third Circuit.
 Argued October 9, 1958.
 Decided November 24, 1958.
 
 Grant W. Wiprud, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Thomas N. Chambers, Attorneys, Department of Justice, Washington, D. C., Harold K. Wood, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., on the brief), for appellant.
 Hayward H. Coburn, Philadelphia, Pa. (Calvin H. Rankin, Ernest L. Nagy, Philadelphia, Pa., Drinker Biddle & Reath, Philadelphia, Pa., on the brief), for appellee.
 Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.
 GOODRICH, Circuit Judge.
 
 
 1
 This is an appeal by the defendant from a district court judgment in favor of Merck & Co., Inc., plaintiff, against the United States. D.C.E.D.Pa.1957, 155 F.Supp. 843. The judgment was for recovery of the overpayment of taxes by the taxpayer for the years 1947 and 1948. Evidently, the taxpayer's initial opinion was that for the two years in question the receipts from the transaction here involved bore the ordinary income rate. Later, being advised differently, it sued to recover the overpayment. The judgment was for $331,728.19 plus interest. The present record plaintiff is Merck & Co., Inc. but the transaction was that of Sharp & Dohme of whom Merck is the successor to all rights and liabilities.
 
 
 2
 While the problem is technically a tax case, the tax question is a simple one once the patent law background is cleared up. Two employees of Sharp & Dohme in 1939 invented and reduced to practice certain chemical compounds colloquially called sulfa drugs and technically sulfonamido pyrimidines. These employees assigned their application to Sharp & Dohme in accordance with a previously made agreement. Later a patent issued from the patent office. While the patent application was pending Sharp & Dohme entered into an agreement with American Cyanamid Company granting to Cyanamid the exclusive right to make, use and sell 2-sulfonamido pyrimidine, more easily called sulfadiazine, and the "organic and inorganic salts thereof." Sulfadiazine was one of the claims in the generic patent for sulfonamido pyrimidines issued by the patent office.
 
 
 3
 Our tax problem is as follows. If the transfer between Sharp & Dohme and Cyanamid of the exclusive right to make, use and sell one of the claims within a generic patent was a "sale * * * of a capital asset" under the applicable section of the Internal Revenue Code,[1] then the taxpayer is entitled to whatever advantage the capital gains rate will give it.
 
 
 4
 A patent, being an intangible asset, cannot technically be "sold," but is more properly the subject of an assignment.[2] Hence, in nontax patent cases, the distinction to be drawn has been between an assignment and a license.[3] But the capital gains sections of the Code permit "sales" of both tangible and intangible assets. Nevertheless, in tax cases courts continue to talk the language of assignment when dealing with transfers of patent rights.[4] The consequence of this practice is that a transfer of all of the substantial rights in a patent is deemed an assignment and qualifies the transferor for capital gains treatment.[5] A transfer of anything less is called a license with a resultant assessment of the tax at ordinary income rates.[6]
 
 
 5
 The question breaks down into two problems. First, did the language used in the agreement between Sharp & Dohme and Cyanamid preclude taxpayer from claiming that the transaction was anything more than a license? The district judge did not have much trouble with this question and we do not either. It is true that the written agreement between the parties talks in terms of the grant of a license. The licensor granted to the licensee "exclusive right and license (excluding also Licensor) to practice and to sublicense * * * the inventions * * *." But, as the district judge emphasizes, the language used in the document is not controlling. See Waterman v. Mackenzie, 1891, 138 U.S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923. Indeed, in one case what the parties agreed was to be a license only was construed as an assignment. Pike v. United States, D.C.Conn.1951, 101 F.Supp. 100, 101.
 
 
 6
 The district judge put it very succinctly when he said, "The agreement must be construed according to what it does rather than what it says, and if it operates to transfer the grantor's entire title and interest in the patent, it will be held to be an assignment." 155 F.Supp. at page 845.
 
 
 7
 It is to be noted here that Cyanamid got an exclusive license and the exclusion applied to the licensor itself. Since, after the agreement, Sharp & Dohme could not and Cyanamid or its licensees could practice the invention patented, it is clear, we think, that Sharp & Dohme endeavored to part with all the substantial interest it had in the patent for sulfadiazine.
 
 
 8
 It should be noted for accuracy that there are some reservations attached to the transfer. Cyanamid is to notify Sharp & Dohme of sublicenses. Sublicenses must be in writing. There is a recapture clause in case of failure on the part of Cyanamid to report or pay royalties.[7] The clause also applies in the event that it goes into bankruptcy or fails to practice the invention. None of these reservations are strong enough to thwart the conclusion that Sharp & Dohme was endeavoring to pass to Cyanamid all of its substantial interests in the sulfadiazine phase of this patent. Allen v. Werner, 5 Cir., 1951, 190 F.2d 840, 842. Cf. Waterman v. Mackenzie, 1891, 138 U.S. 252, 256, 11 S.Ct. 334, 34 L.Ed. 923.
 
 
 9
 Whether the transferee could sue for infringement in his own name or whether the transferor must be joined as a party plaintiff in such suit is not a question of importance in determining whether the transaction is to be treated as a "sale" or as merely a license for tax purposes. Rollman v. Commissioner, 4 Cir., 1957, 244 F.2d 634, 638; Lawrence v. United States, 5 Cir., 1957, 242 F.2d 542, 544. Nevertheless, it should be pointed out that an exclusive licensee, even though he cannot sue in his own name, can join a hostile licensor (owner) as a party defendant to an action for infringement against a third party infringer. And if the reluctant licensor is beyond the service of process, the exclusive licensee may join him as an involuntary plaintiff. 3 Moore, Federal Practice ¶¶ 17.11[1], 19.06 (2d ed. 1948). Independent Wireless Telegraph Co. v. Radio Corporation of America, 1926, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357; Deitel v. Chisholm, 2 Cir., 1930, 42 F.2d 172.
 
 
 10
 In any event the question of who must bring suit is a purely procedural matter and does not determine either way the effect of an attempt at transfer of an intangible right.
 
 
 11
 So now we have reached the real heart of the case. It is the Government's contention that, no matter what the taxpayer's intention, it could not carve out from the patent issued to it for sulfonamido pyrimidines (the generic patent) the 2-sulfonamido pyrimidine which it purported to pass over to Cyanamid so that the transfer is a "sale" for tax purposes. One generic patent was issued to the original patentee. But there were species claims and the species were separate inventions. A single patent may issue for two or more separate inventions as said in Special Equipment Co. v. Coe, 1945, 324 U.S. 370, 65 S.Ct. 741, 89 L.Ed. 1006. Now in this case the parties did stipulate that there was a plurality of inventions. They use the plural in sections 13 and 14 of their stipulation and in section 16 they said:
 
 
 12
 "16. 2-sulfonamido pyrimidine is one of the members of the class of chemical compounds known as sulfonamido pyrimidines and, as such, is one of the inventions described and claimed generically in said Letters Patent No. 2,407,966."
 
 
 13
 The stipulation shows that "2-sulfonamido pyrimidine" is a separate member of a class. Having separate identity, it can be sold.
 
 
 14
 The analogies point in this direction. One who owns a single invention patent may "sell" its use in a particular territory or industry, United States v. Carruthers, 9 Cir., 1955, 219 F.2d 21, or for one industrial use only, First National Bank of Princeton v. United States, D.C. D.N.J.1955, 136 F.Supp. 818, 823-824. The owner of a copyright can, at least for having the transfer effective as a sale of capital, "sell" printing rights to one buyer and motion picture rights to another. Herwig v. United States, 1952, 105 F.Supp. 384, 122 Ct.Cl. 493. The same thing is true in the field of trademarks. Seattle Brewing & Malting Co., Inc. v. Commissioner, 1946, 6 T.C. 856, affirmed per curiam, 9 Cir., 1948, 165 F.2d 216; Rainier Brewing Co., Inc. v. Commissioner, 1946, 7 T.C. 162 affirmed per curiam 9 Cir., 1948, 165 F.2d 217.
 
 
 15
 All this adds up to the conclusion that the taxpayer's position is correct. The language of its contract was stronger and more complete in its grant than several of the contracts which have been determined to be sales of capital assets.[8] While the immediate point in this case is evidently novel we think all the analogies permit the type of transfer that the taxpayer made here to be treated as a sale. A stipulation provides that the taxpayer is not engaged in the trade or business of selling patents. Its transfer of the right to make, use and sell sulfadiazine is a sale of a capital asset and subject to the capital gains rate only.
 
 
 16
 The judgment of the district court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 Int.Rev.Code of 1939, § 117(a) (1), 117(a) (4), 26 U.S.C.A. § 117(a) (1, 4)
 
 
 [2]
 See generally 4 Corbin, Contracts §§ 856, 859-61 (1951)
 
 
 [3]
 E. g., Waterman v. Mackenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923; Kenyon v. Automatic Instrument Co., 6 Cir., 1947, 160 F.2d 878
 
 
 [4]
 E. g., Watson v. United States, 10 Cir., 1955, 222 F.2d 689; Switzer v. Commissioner, 6 Cir., 1955, 226 F.2d 329; United States v. Carruthers, 9 Cir., 1955, 219 F.2d 21; Edward C. Myers, 1946, 6 T.C. 258
 
 
 [5]
 E. g., Lockhart v. Commissioner, 3 Cir., 1958, 258 F.2d 343, 348-349; United States v. Carruthers, 9 Cir., 1955, 219 F.2d 21; Kavanagh v. Evans, 6 Cir., 1951, 188 F.2d 234
 
 
 [6]
 E. g., Lynne Gregg, 1952, 18 T.C. 291, affirmed per curiam, 3 Cir., 1953, 203 F. 2d 954; Cleveland Graphite Bronze Co., 1948, 10 T.C. 974, affirmed per curiam, 6 Cir., 1949, 177 F.2d 200
 
 
 [7]
 The fact that payment for the rights granted was in the form of royalties calculated as a percentage of the net sales value of sulfadiazine does not prevent these payments from being taxed at the capital gains rate. Lawrence v. United States, 5 Cir., 1957, 242 F.2d 542; Commissioner v. Hopkinson, 2 Cir., 1942, 126 F.2d 406, 410; Edward C. Myers, 1946, 6 T.C. 258
 
 
 [8]
 E. g., Rollman v. Commissioner, 4 Cir., 1957, 244 F.2d 634; Allen v. Werner, 5 Cir., 1951, 190 F.2d 840; Kavanagh v. Evans, 6 Cir., 1951, 188 F.2d 234