Michael J. VON BRIMER et al., Co-executors of the Estate of Joseph W. Von Brimer, Deceased, Plaintiffs-Appellants,

v.

WHIRLPOOL CORPORATION, Defendants-Appellees.

No. 74–1807.

United States Court of Appeals, Ninth Circuit.

May 24, 1976.

Christine A. Snyder (argued), of Wyman, Bautzer, Rothman & Kuchel, Los Angeles, Cal., for plaintiffs-appellants.

Peter D. Kasdin (argued), of Arnstein, Gluck, Weitzenfeld & Minow, Chicago, Ill., for defendants-appellees.

## OPINION

Before KOELSCH and TRASK, Circuit Judges, and PALMIERI,* District Judge.

TRASK, Circuit Judge:

On May 13, 1969, the original plaintiff, Joseph W. Von Brimer, now deceased, filed a three count complaint against the Whirlpool Corporation, alleging (1) fraudulent appropriation; (2) malicious prosecution; and (3) intentional interference with contractual relations and prospective business advantage. He sought $150 million actual damages and $150 million punitive and exemplary damages. This action is now pursued by plaintiff Von Brimer's estate.

All the claims in the complaint were related to a linear induction motor developed by Von Brimer. Counts 2 and 3 were dismissed for failure to state a claim upon which relief could be granted. Subsequently, Count 1 was dismissed upon Whirlpool's Motion for Summary Judgment, one ground being that the claim was barred by the statute of limitations.

The case owes its origins to a series of meetings in 1962 between Von Brimer, a well-known inventor, and representatives of appellee, Whirlpool Corporation, a nationally-known manufacturer of washing machines. At these meetings, Von Brimer demonstrated his electrical linear induction motor which could be attached to washing machines and thereby utilize electricity more efficiently. Von Brimer and Whirlpool were hoping to execute a formal royalty agreement concerning use of this motor, but were unable to reach an agreement.

In November 1962, Von Brimer filed an application for a patent of his motor with the United States Patent Office. This patent was granted on July 13, 1965. In July 1963, one Lake, a representative of Whirl-pool, filed an application for a patent on an invention very similar to that of Von Brimer's. The conflicting claims lead to an interference action between the two applications. Von Brimer became aware of the interference action sometime in 1966, the exact time being here in dispute, and the action was successfully terminated in Von Brimer's favor in January 1969.

Because this appeal centers in large part around the question of whether Von Brimer had title to the patented invention at pertinent points in time, several transactions with respect to the patent's title should also be outlined here. In late 1962, Von Brimer assigned and transferred to one Bollinger an undivided one-half interest in the invention. This undivided half-interest is hereinafter referred to as "Chain A" in the patented invention's title. On November 27, 1967, Bollinger conveyed his interest in the patent to one Quirk.

The parties to this appeal are in dispute as to the effect of this transfer. Whirlpool claims that this agreement provided for automatic reversion from Quirk to Bollinger after one year if Quirk had neither secured a license for the patent nor paid $10,000 to Bollinger. Both sides agree that Quirk did not meet either of these conditions. Appellants claim that this agreement was modified to provide an optional power of termination in Bollinger after two years, upon notice to Quirk.

In either case, Quirk conveyed whatever interest he had in the invention to Von Brimer on February 13, 1969. The trial court held that this transaction was a nullity since, it found, interest in the patent reverted automatically to Bollinger in 1968 and therefore, Quirk had no interest to convey to Von Brimer in 1969.

Some interest in the other one-half of the patent's title was conveyed from Von Brimer to the V. B. Research and Development Corporation on November 30, 1963. This half-interest is referred to as "Chain B" in

---

* Honorable Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

the patent's title. The extent of the interest conveyed in this transaction is in dispute and at issue on appeal. Appellants maintain that Von Brimer conveyed only a license to the corporation, while appellee maintains that Von Brimer assigned away all of his interest.

Whether Von Brimer ever reacquired the interest he conveyed to the V. B. Research and Development Corporation is also in dispute. A photocopy of an agreement dated November 15, 1967, between Von Brimer and the corporation, Plaintiff's Exhibit 6, purporting to reinvest all rights in the patented item in Von Brimer, was originally admitted into evidence, subject to a motion to strike. Upon a motion for reconsideration, however, the exhibit was excluded because it was not produced in a timely manner pursuant to pre-trial discovery orders and because it could not qualify under the best evidence rule. On appeal, appellants object to the exclusion of this agreement.

Von Brimer instituted his suit on May 13, 1969. In response to the complaint, Whirlpool raised two affirmative defenses: (1) that Von Brimer had failed to state a claim upon which relief can be granted; and (2) that Von Brimer's action was barred by the statute of limitations. The parties agreed to a trifurcated trial in which the question of whether the complaint had stated a claim upon which relief can be granted would be determined by the court without a jury, and a jury trial on issues of liability and damages would follow if necessary. On December 20, 1972, the court decided that the complaint had successfully stated a claim for relief.

■ Whirlpool then filed a motion for reconsideration on January 18, 1973, arguing that this question had been decided

upon the basis of Plaintiff's Exhibit 6, discussed *supra.* This exhibit was produced just prior to trial and counsel for Whirlpool argued that they did not have the opportunity to respond adequately. On March 21, 1973, the court granted Whirlpool's motion and excluded Exhibit 6. After a hearing on April 26, 1973, the court then decided the question of standing[1] adversely to appellants, thereby vacating its decision of December 20, 1972, and dismissing Counts 2 and 3 of the complaint. The district court's opinion is printed at 362 F.Supp. 1182.

On September 18, 1973, Whirlpool filed a motion for summary judgment on Count 1 of the complaint, alleging that there was no genuine issue of material fact relating to the necessary element of economic detriment and that the claim was barred by the statute of limitations. After a hearing, the court granted Whirlpool's motion. Appellants' motion for a rehearing was denied on January 30, 1974, and they filed notice of appeal on February 11, 1974.

Counts 2 and 3 of the complaint were dismissed because the trial court found that Von Brimer lacked a proprietary interest in the patented item at the time he instituted suit that would support those alleged causes of action. This appeal is based upon objection to the exclusion of certain evidence which would, appellants maintain, establish the proprietary interest in the patented item. Appellants also argue, however, that a proprietary interest in the patented item is not necessary to pursue Counts 2 and 3. With respect to the granting of summary judgment on Count 1 of his complaint, they argue that triable issues remain as to whether Whirlpool was unjustly enriched by the wrongful appropriation of the patented item and as to whether certain notification constituted "discovery" of the fraud

---

1. The trial court considered the question of Von Brimer's ownership, *vel non,* of a "proprietary interest" in the patent as creating an issue of standing. In a diversity case where a federal court is "only another court of the State" and where "the outcome of the litigation in the federal court should be substantially the same . . . as it would be if tried in a State court," *Guaranty Trust v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079

(1945), a conceptual difficulty arises. "Standing" in its strict sense is "a complicated specialty of federal jurisdiction," *United States ex. rel. Chapman v. Federal Power Commission,* 345 U.S. 153, 156, 73 S.Ct. 609, 612, 97 L.Ed. 918 (1953). In context, what the trial court considered and what we consider is whether the person who brings the suit is a person harmed by the alleged wrong. Wright, *Law of Federal Courts* § 13, at 36 (1963 ed.).

so as to commence the statute of limitations.

We hold that a proprietary interest in the patented item was necessary to pursue Von Brimer's third cause of action for interference with contractual relations and prospective business advantage and that the trial court's conclusion that Von Brimer failed to establish that proprietary interest was correct. We hold that a proprietary interest was not necessary to pursue Von Brimer's second cause of action for malicious prosecution. Finally, we hold that the first cause of action for fraudulent appropriation was barred as a matter of law by the statute of limitations and that summary judgment was therefore properly granted.

Jurisdiction in this case, in which common law causes of action are asserted, is based upon diversity of citizenship, 28 U.S.C. § 1332. Von Brimer was a California resident and Whirlpool is a Delaware corporation whose principal place of business is in Michigan. The amount of damages sought is considerably in excess of the statutory minimum. Both parties agree that on the basis of *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), and *Klaxon Co. v. Stentor Electric Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the applicable substantive law is that of the state of California.

### Counts 2 and 3

A.  Whether Von Brimer held a proprietary interest in the patented item at the time the suit was instituted.

Appellants argue that several items of evidence which would have indicated a proprietary interest in the patented item were wrongfully excluded at trial. They also argue that the trial court erred in determining that an agreement executed on November 30, 1963, between Von Brimer and the V. B. Research and Development Corporation, in which he conveyed to the corporation certain interests in the patented item, was an assignment and not a license. Several exhibits, 6, 14, 15, and 17, were excluded because not produced in a timely manner in compliance with pre-trial discovery orders. Exhibits 15 and 17 were also excluded on the basis of the parol evidence rule and Exhibit 6 was also excluded on the basis of the best evidence rule.

Exhibits 15 and 17 related to Chain A in Von Brimer's title. They were memoranda changing the terms of the contract offered as Exhibit 5. All three exhibits dealt with the transfer of interest in the patent from Bollinger to Quirk. Under Exhibit 5, dated November 27, 1967, the transfer of one-half interest in Von Brimer's patented item was subject to automatic reversion to Bollinger if Quirk did not secure a license for the product within one year or pay Bollinger $10,000. Quirk met neither of these requirements within the applicable period. Under Exhibits 15 and 17, however, optional power of termination was vested in Bollinger after two years. The trial judge held that Exhibit 5 was an integrated instrument embodying the intent of the parties, and excluded Exhibits 15 and 17 on the basis of the parol evidence rule. He then held that a transfer of interest from Quirk to Von Brimer on February 13, 1969, could have no effect, since interest in the patented item reverted automatically to Bollinger on November 27, 1968. Appellants' primary contention is that the parol evidence rule is inapplicable in California to contemporaneous written agreements.

Exhibit 6 was a photocopy of an agreement between V. B. Research and Development Corporation and Von Brimer of November 15, 1967, purporting to transfer back to Von Brimer the interest in the patented item which the trial judge had ruled he conveyed away in the assignment of November 30, 1963. This exhibit was excluded under the best evidence rule because plaintiff below (a) had failed to explain adequately the absence of the originals, even though testimony indicated that there were several; (b) had failed to show that a diligent effort to ascertain the location of the original was made; and (c) relied upon a poor copy of a document

bearing on its face conflicting dates and pencil markings, 362 F.Supp. at 1185.

■ Because we hold that these items were properly excluded pursuant to Fed.R. Civ.P. 37(b)(2), which permits a trial judge to impose sanctions for failure to comply with pre-trial discovery orders, we need not consider the admissibility of Exhibits 15 and 17 on the basis of the parol evidence rule or of Exhibit 6 on the basis of the best evidence rule. Exhibit 6 was produced by appellants literally on the eve of trial and Exhibits 14, 15, and 17 were even more belatedly produced. An order for production of documents was granted by the court on December 1, 1969. The following account indicates why the trial judge found "a willful failure to comply" with that order:

"While documents were produced pursuant to this order, Plaintiffs' Exhibit 6, purportedly prepared on December 15, 1967, was not among them. On February 12, 1970, defendant served plaintiffs with some interrogatories directed toward ascertaining whether all documents required by the Court's order of December 1, 1969, had been produced. Plaintiffs' answers indicated that compliance had been effected. On May 5, 1971, plaintiffs' attorney filed a certificate of readiness under Local Rule 103 alleging completion of plaintiffs' response to defendant's request for production of documents.

"This action was then dismissed on May 19, 1971, for lack of prosecution. In seeking reinstatement of the action, counsel for plaintiffs indicated that full compliance with the court's discovery order had been effected. The judgment of dismissal was vacated on July 26, 1971. The case was then reassigned to the undersigned on February 1, 1972. A status conference was held on May 2, 1972, and the matter set for trial on October 31, 1972. In the joint status report plaintiffs' counsel again represented to the court that discovery had been completed.

"On October 12, 1972, less than three weeks before trial and some six months after the last of numerous representations to the Court that pretrial discovery orders had been complied with, plaintiffs came forth with nine additional documents, not previously produced. Plaintiffs' Exhibit 6 was not even among those late documents.

"Finally, on October 30, 1972, one day prior to trial, defendant was furnished a copy of Plaintiffs' Exhibit 6."

362 F.Supp. at 1186.

Among the sanctions permitted by Rule 37 are "an order . . . prohibiting him [the disobedient party] from introducing designated matters in evidence." This is sub-section (b)(2)(B). Sub-section (b)(2)(C) allows an order "dismissing the action or proceeding or any part thereof." Appellants argue that because the excluded exhibits were dispositive of their case, the sanctions imposed here amounted to a dismissal under (b)(2)(C). They claim that "lesser penalties" rather than the "most extreme sanction" should have been imposed. They liken their position to that of the plaintiff in *Société Internationale Pour Participations Industrielles et Commerciales v. Rodgers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), where the Court discussed the due process limitations upon a 37(b)(2)(C) dismissal when the party had made a good-faith effort to produce requested material. The Court there held that dismissal could only be justified when non-compliance was the result of "willfulness, bad faith or any fault of petitioner," 357 U.S. at 212, 78 S.Ct. at 1096.

Appellants' reliance upon *Société Internationale* is misplaced for several reasons. First, it is worth repeating, their non-compliance was found to be "willful," 362 F.Supp. at 1186, which would, of course, justify dismissal under *Société Internationale.*

Moreover, even if appellants' non-compliance were not willful, their attempt to compare their "good faith" to that of plaintiff in *Société Internationale* is specious. That case was an action for the return of property seized pursuant to the Trading with the Enemy Act and was brought by a Swiss

holding company. The Court concluded that the plaintiff's role there was more closely akin to that of a defendant, 357 U.S. at 210, 78 S.Ct. 1087. The requested evidence was not produced in that case because to do so would have violated foreign law and would have subjected plaintiff to foreign criminal sanctions. "[P]etitioner's failure to satisfy fully the requirements of this production order was due to inability fostered neither by its own conduct nor by circumstances within its control," the Court noted at 211, 78 S.Ct. at 1095. Appellants' situation here is almost exactly the contrary.

█ Finally, contrary to what appellants argue, their case was not dismissed pursuant to Rule 37(b)(2)(C). Rather, evidence was excluded, as subsection (b)(2)(B) allows, which in turn led to the dismissal of their case. The trial court received foundation testimony and made findings of fact concerning these exhibits. The "lesser penalties" for which appellants argue were in fact imposed. To argue that the trial judge imposed the "most extreme sanction" of dismissal is to distort what actually occurred.

█ By the very nature of its language, sanctions imposed under Rule 37(b) must be left to the sound discretion of the trial judge. *Craig v. Far West Engineering Co.,* 265 F.2d 251, 260 (9th Cir.), *cert. denied,* 361 U.S. 816, 80 S.Ct. 57, 4 L.Ed.2d 63 (1959). We recognize that this discretion is not boundless, but under these circumstances find no abuse. *See DeGregorio v. First*

*Discount Corporation,* 506 F.2d 781, 788–89 (3d Cir. 1974).

Appellants also maintain that the instrument by which Von Brimer transferred certain interest in the patented item to the V. B. Research and Development Corporation on November 30, 1963, was a mere licensing agreement. The trial judge found this instrument to be an assignment of all of Von Brimer's interest in the patented item and thereby concluded that any proprietary interest he might have had terminated on that date.[2]

The trial judge derived support for his conclusion that the instrument was an assignment from *Waterman v. Mackenzie,* 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891), a case in which the Supreme Court attempted to set down guidelines for distinguishing licenses from assignments. *Waterman* stands for the proposition that the name given the instrument is not determinative and that the true test is its "legal effect," 138 U.S. at 256, 11 S.Ct. 334. The pertinent language from *Waterman* is at 255, 11 S.Ct. at 335 and reads as follows:

"Every patent issued under the laws of the United States for an invention or discovery contains 'a grant to the patentee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery throughout the United States and the Territories thereof.' The monopoly thus granted is one entire thing, and cannot be divided into parts except as authorized by those laws. The patentee or his assigns may by instrument in writ-

2. WHEREAS, I, J. W. von Brimer, have invented a certain Washing Machine Drive System for which I have made application for Letters of Patent of the United States on the 5th day of November, 1962, Serial No. 235,352; and

"WHEREAS, V. B. Research & Development, a Nevada corporation, is desirous of acquiring the right to license thereof.

"NOW, THEREFORE, in consideration of the sum of $10.00 in hand paid, the receipt of which is hereby acknowledged, and other valuable consideration, I, J. W. von Brimer, by these presents do sell, assign, and transfer unto V. B. Research & Development the sole and exclusive license and privilege to manufacture,

use and sell and to grant sublicenses thereof together with the right to assign this license for the territory of the United States of America and for all foreign countries in and to said invention as described in the specification above identified file for obtaining Letters Patent of the United States therefor to be held and enjoyed by V. B. Research & Development for its own use, behoof, and its successors, assigns and legal representatives to the full end of the term of which said Letters Patent may be granted as full and entirely as the same would be held by me had this assignment and sale not been made, and I covenant and warrant I have full right to do so." Ex. D.

ing, assign, grant and convey, either, 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States . . . A transfer of either of these three kinds of interest is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with the right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement.

Appellants urge us to adopt the approach of *Switzer v. Commissioner of Internal Revenue,* 226 F.2d 329 (6th Cir. 1955). They maintain that that case stands for the proposition that where the language of an instrument transferring interest in a patent is "at all unclear or ambiguous" a court "must" look to the "total factual complex surrounding the transaction." While not specifically stated, appellants appear to argue that *Switzer* offers an alternative and more sound approach than that of *Waterman.*

Two factors lead us to the conclusion that the trial judge was correct in determining that the instrument was an assignment and not a license. First, to the extent that *Waterman* and *Switzer* are incompatible, *Waterman* clearly represents the stronger line of authority. Within the last fifteen years, numerous cases have followed *Waterman* and few have followed *Switzer* on this precise point. This court followed *Waterman* in 1974, in the case of *Transducer Patents Company v. Renegotiation Board,* 492 F.2d 247, 249 (9th Cir. 1974). We said there:

"The Tax Court held that this agreement, though in terms a license, was in actuality a sale. In so holding, it applied well-settled case law. In *Waterman v. Mack-*

*enzie,* 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891), the court said an agreement which grants an exclusive license to make, to sell, and to use, is a sale of the patent even if it is called a license. An agreement which purports to be a sale which does *not* grant all three rights is, on the other hand, a mere license." [Emphasis in original.]

Moreover, the trial judge did not ignore *Switzer.* He stressed the lack of reservation of rights in this instrument, in contrast to the instrument in *Switzer* in which the license was granted "subject to all prior licenses" which the "Licensee agrees to honor," as noted in the second *Switzer* case, 242 F.2d at 912. The trial judge was impressed by the similarity in language between the disputed instrument and the patent grant itself. He found the two grants to be "virtually identical." Appellants argue vigorously, both before the trial court and this court, that Von Brimer retained substantial control over the patent grant. This testimony was discounted by the trial judge as due to Von Brimer's influence as a majority shareholder in the V. B. Research and Development Corporation, 362 F.Supp. at 1193. Viewed from this perspective, then, the trial judge actually chose to follow *Switzer,* heard testimony concerning the "total factual complex surrounding the transaction" and, as trier of fact, was unpersuaded by the evidence pointing to the retention of interest by Von Brimer in the patented item.

We think that, on the basis of *Waterman,* the instrument was an assignment as a matter of law. Even were the question to be considered one of fact, however, as *Switzer* appears to indicate, in our appellate review of the relevant fact-finding, we are by no means "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). We therefore affirm the trial judge's conclusion that the instrument was an assignment of all of Von Brimer's interests. Because we also have held that the contested

exhibits were properly excluded pursuant to Rule 37, we are in agreement with the trial judge that Von Brimer did not possess a proprietary interest in the patent to the linear induction motor at the time he instituted this suit.

B. Whether a proprietary interest in the patented item was necessary to pursue these claims.

In deciding this question, we are guided specifically by the injuries appellants claim. With respect to Count 2 for intentional interference with contractual relations and prospective business advantage, appellants assert that because of Whirlpool's actions, a loss of income to the V. B. Research and Development Corporation, of which Von Brimer was a majority shareholder, has resulted; that the value of his stock in that corporation has declined; and that the amount of money he would have received on assignment from the corporation has likewise been reduced because of defendant's wrongful acts.

■ We find this claim barred by the settled principle in California law that economic injury to a shareholder cannot support a personal cause of action. The rule was expressed in *Sutter v. General Petroleum Corp.*, 28 Cal.2d 525, 170 P.2d 898, 900–01 (1946):

"Generally, a [shareholder] may not maintain an action in his own behalf for a wrong done by a third person to the corporation on the theory that such wrong devalued his stock and the stock of other shareholders, for such an action would authorize multitudinous litigation and ignore the corporate entity. Under proper circumstances a shareholder may bring a representative action or derivative action on behalf of the corporation."

The rule of *Sutter* is a salutary one which avoids multitudinous litigation and recognizes the corporate entity. This court has followed the *Sutter* principle even in instances when we were not strictly bound by California law, *e. g., Erlich v. Glasner*, 418 F.2d 226, 228 (9th Cir. 1969), where we applied this principle to an individual who owned all the stock in a corporation. *Sutter* is susceptible to an exception when the injury is to the plaintiff individually, "as where the action is based on a contract to which he is a party, or on a right belonging severally to him, or on a fraud affecting him directly," 170 P.2d at 901.

With respect to this particular claim, however, Von Brimer's effort to bring himself within this exception was limited to the bald and unsubstantiated assertion that he had suffered "unique injury not characteristic of that suffered by other VBR&D shareholders." (Appellant's Reply Brief at 9.) The trial judge was unpersuaded by this line of argument, 362 F.Supp. 1195, n.6. As an appellate court, we are even less persuaded. On appeal, the theory was advanced only in Appellants' Reply Brief, giving defendants no opportunity to respond. "New material does not belong in a reply brief. . . . Certainly the use of new material in a reply brief transgresses against the canons of fair forensics." *Fredrick v. United States*, 163 F.2d 536, 549 (9th Cir.), *cert. denied*, 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 360 (1947). *See also Lenske v. Steinberg*, 415 F.2d 711, 712 (9th Cir. 1969), 9 *Moore's Federal Practice* ¶ 228.02[2.–3].

Nor are we of the view that *Adolphus v. Zebelman*, 486 F.2d 1323 (8th Cir. 1973), a case upon which appellants rely heavily, compels a contrary result. Assuming that that case holds that economic injuries to a shareholder are sufficient without more to allow him to sue individually, and discounting temporarily its many dissimilarities from the case at bar, we are not bound by its holding in a diversity action. To the extent that there is an incompatibility between *Adolphus* and *Sutter*, we must follow *Sutter* as the controlling expression of existing California law. *Kovacs v. Sun Valley, Inc.*, 499 F.2d 1105, 1106 (9th Cir. 1974), *Hardy v. Hull Corporation*, 446 F.2d 34, 35 (9th Cir. 1971).

■ We therefore hold that, given his lack of a proprietary interest in the patented item, appellants' allegations of intentional interference with contractual relations

and prospective economic advantage fail to state a claim upon which relief can be granted.

We hold, however, that this lack of a proprietary interest would nor bar Von Brimer from asserting his claim for malicious prosecution. In California, actions for malicious prosecution are "personal actions which do not give rise to a cause of action in any one other than the person directly aggrieved," *Sea World, Inc. v. Superior Court,* 13 Cal.App.3d 100, 91 Cal.Rptr. 336, 340 (1970), *citing Coverstone v. Davis,* 38 Cal.2d 315, 239 P.2d 876, 881 (1952). The theoretical basis for the award of damages in a malicious prosecution suit is "the inconvenience or harm resulting, naturally or directly, from the original prosecution." 6 Cal.Jur.3d, *Assault & Other Willful Torts* § 342 at 574. The range of damages potentially recoverable in a malicious prosecution action in California is strikingly broad. Damages may be recovered for loss of time, deprivation of liberty, injury to fame, reputation, character, social or mercantile standing, mental suffering, injury to credit, and for sums expended in defending the unfounded lawsuit. *Babb v. Superior Court,* 3 Cal.3d 841, 92 Cal.Rptr. 179, 479 P.2d 379, 383 n.4 (1971), *Davis v. International Brotherhood of Electrical Workers,* 16 Cal.App.3d 686, 94 Cal.Rptr. 562, 568 (1971), *Peebler v. Olds,* 71 Cal.App.2d 382, 162 P.2d 953, 957 (1945).

Actions for malicious prosecution are not favored by California courts, *Babb v. Superior Court, supra* 92 Cal.Rptr. 179, 479 P.2d at 382, even in civil suits. Nonetheless, malicious prosecution actions can be instituted as a result of administrative as well as judicial proceedings. *Hardy v. Vial,* 48 Cal.2d 577, 311 P.2d 494, 496 (1957).

The elements of malicious prosecution in California, as elsewhere, are (1) a judicial proceeding favorably terminated; (2) want of probable cause; and (3) malice. *Jaffe v. Stone,* 18 Cal.2d 146, 114 P.2d 335, 337 (1941); *Oppenheimer v. Tamblyn,* 162 Cal.App.2d 293, 327 P.2d 574, 576 (1958).

While *Sutter* may preclude appellants from recovering for economic detriment suffered by the corporation, some of these damage claims are potentially recoverable even though Von Brimer did not own the patent at the time of the interference action or at the time he filed suit.

Von Brimer was a well known and prolific inventor. In early 1962 he had invented the motor in question and had demonstrated it to an employee of Whirlpool. As a result, Whirlpool sent one of its engineers to Von Brimer's laboratory where Von Brimer demonstrated his invention. Von Brimer filed the application with the Patent Office and the patent was issued to him. The interference, notice of which was given on April 26, 1966, was filed as a result of an application for a patent on a similar invention filed in the Patent Office on July 8, 1963, by Robert Lake, the very employee of Whirlpool to whom Von Brimer had demonstrated his invention a year before. In 1969 the Patent Office issued its decision determining the question of originality of invention in favor of Von Brimer. From the opinion of the examiners, a trier of fact could well conclude that Lake derived his concept of the motor for washing machines from Von Brimer. In the meantime, Von Brimer had been required to defend his invention against attack and had seen his skill and reputation as an inventor questioned in the Patent Office itself. This was not simply an attack on the invention in the nature of an in rem proceeding which might depend on a proprietary interest in the invention. Over and beyond this it could well be taken as an attack on the inventor, questioning both his ability and his integrity.

In remanding this claim for further consideration, therefore, we hold only that Von Brimer's claim of malicious prosecution was not barred because he did not own the patent at the time of the interference action. Defendant may wish to raise defenses to such a suit based upon Von Brimer's failure to satisfy any or all of the elements of a malicious prosecution action enumerated above.

*Count 1*

On December 11, 1973, after Counts 2 and 3 had already been dismissed, the court granted Whirlpool's motion for summary judgment of Von Brimer's claim of fraudulent appropriation. In the proceeding below, appellants' argument was directed toward showing (1) that Whirlpool had "used" Von Brimer's motor, even though it was undisputed that Whirlpool had never manufactured, marketed or sold any washing machine containing the motor; and (2) that Von Brimer had suffered economic injury through his role as a shareholder in the V. B. Research and Development Corporation. At that time, appellants made an extensive effort to bring themselves within the *Sutter* exception for the fraudulent appropriation claim. Both these contentions were resolved against appellants.

■ The trial court also held that Von Brimer's claim was barred by § 338(4) of the California Code of Civil Procedure,[3] the California statute of limitations for fraud actions, on the basis of a notice Von Brimer had received on April 26, 1966, from the Patent Office advising him that an interference had been declared with regard to his linear induction motor. This notice specified the claims which were involved in the interference and identified the opposing parties, specifically Lake and the Whirlpool Corporation. The notice also specified the precise claims which conflicted. The trial judge held that "discovery of the fraud" took place upon receipt of this notice and that the three year limitation period began to run as of that date. Because Von Brimer had filed his complaint on May 13, 1969, his claim was found to be time-barred.

Because we agree with this conclusion, we have no cause to pass upon appellants' other challenges to the granting of the motion for summary judgment. We note only in passing that most of the questions which appellants denominate as "triable issues of

fact" were not presented to the court below, and, as a general rule, this precludes appellate review. *Byrd v. Wolff,* 490 F.2d 1277, 1278 (9th Cir. 1974), *DeBardeleben v. Cummings,* 453 F.2d 320, 324 (5th Cir. 1972), 6 *Moore's Federal Practice* ¶ 56.27[1], at 2975.

The California Supreme Court, in interpreting the statute of limitations for fraud actions, has stated:

"The statute commences to run only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." *Hobart v. Hobart Estate Co.,* 26 Cal.2d 412, 437, 159 P.2d 958, 972 (1945).

While this question of knowledge can be a factual one, "when [the] knowledge had by or imputed to plaintiff is such as to compel the conclusion that a prudent man would have suspected the fraud, the court may determine as a matter of law that there has been 'discovery.'" *Helfer v. Hubert,* 208 Cal.App.2d 22, 24 Cal.Rptr. 900, 902 (1962).

Appellants argue in their brief that mere suspicion of fraud is not sufficient to begin the statute of limitations. While this may be true, it does not follow that the standard is absolute certainty that a fraud has been perpetrated. The standard in *Hobart* —"knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud"—indicates that a serious or strong suspicion, short of absolute certainty, is sufficient to start the statute running. As this court stated, when called upon on a previous occasion to interpret § 338(4), "Failure to discover all the details of a fraud does not prevent the statute from running," *Turner v. Lundquist,* 377 F.2d 44, 48 (9th Cir. 1967). We hold that Von Brimer's receipt of notice from the Patent Office on April 26, 1966, specifying the claims involved in the interference and identifying Lake and Whirlpool as the opposing parties, would have made a reasonably prudent per-

---

**3.** Section 338 imposes a three year limitation upon the commencement of certain actions, among them "[a]n action for relief on the ground of fraud or mistake." Subsection (4) of section 338 goes on to state: "The cause of action in such case not to be deemed to have occurred until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

son suspicious of fraud and was thus sufficient to constitute discovery as a matter of law.

In summation, then, the judgment of the lower court on Counts 1 and 3 is affirmed. Count 2 is reversed and remanded for further proceedings not inconsistent with this opinion. It is so ordered.