709 F.2d 593
 SHELL PETROLEUM, N.V., Plaintiff-Appellant,
v.
Mary Ann GRAVES, Kenneth Cory, Ernest J. Dronenburg, Jr.,
individually and as members of, and Gerald H. Goldberg,
individually and Executive Officer of, The Franchise Tax
Board, State of California, Defendants-Appellees.
 No. 82-4535.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 14, 1983.
Decided June 30, 1983.
 
 John B. Lowry, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., Paul M. Dodyk, New York City, for plaintiff-appellant.
 Patricia Streloff, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.
 Lloyd N. Cutler, Wilmer, Cutler & Pickering, Washington, D.C., amicus curiae for the Netherlands.
 Appeal from the United States District Court for the Northern District of California.
 Before TRASK, SKOPIL, and FERGUSON, Circuit Judges.
 TRASK, Circuit Judge.
 
 
 1
 Shell Petroleum N.V. (SPNV) appeals the dismissal of its action for declaratory and injunctive relief. Pursuant to 42 U.S.C. Sec. 1983 (1976), SPNV sought to enjoin the California Franchise Tax Board from assessing taxes based on a "unitary" business formula against two companies in which SPNV was the majority stockholder. The district court dismissed SPNV's complaint for lack of standing and because the controversy was not ripe. The decision of the district court is affirmed.
 
 
 2
 * SPNV is a Netherlands company. During the years relevant to this action, 1967 to 1976, SPNV held 69 percent of the common stock of Shell Oil, a Delaware corporation. SPNV also owned all the stock of Scallop Holding Inc., a Delaware corporation, which in turn owned all the stock of Scallop Nuclear, also a Delaware corporation. Shell Oil and Scallop Nuclear both conducted business in California during the relevant period.
 
 
 3
 California's corporate franchise tax is a "unitary" income tax based on the taxpayer's business activities both within and without the state. See Cal.Rev. & Tax.Code Secs. 25120 to 25140 (West 1979). As a threshold question the Board determines which operations of the taxpayer and related companies are sufficiently integrated in the production of overall corporate income to warrant "unitary" treatment. Ratios based on the taxpayers total property, payroll and sales values in California compared to the same items of the unitary business throughout the world are then calculated. The average of the ratios is then applied to the worldwide net income of the unitary business to determine the taxpayer's income in California for tax purposes.
 
 
 4
 The Board is in the process of auditing Shell Oil and Scallop Nuclear. The Board has demanded information concerning the worldwide operations of SPNV from Shell and Scallop. SPNV alleged that the board had made or would make a determination that the California taxpayers were part of a unitary business consisting of all companies worldwide in which SPNV is the majority owner. According to SPNV, such a determination will produce a gross disproportion between the income attributed to the California activities of Shell and Scallop and the income actually earned.
 
 II
 STANDING
 
 5
 Although SPNV has thoroughly briefed the Constitutional aspects of standing, the district court's decision in this case was based on prudential rather than Constitutional grounds. SPNV is a shareholder in both Shell and Scallop. Generally, a shareholder does not have standing to redress an injury to the corporation. Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 439-40 (9th Cir.1979) (sole shareholder had no standing to assert either federal or state law claims); Von Brimer v. Whirlpool Corp., 536 F.2d 838, 846 (9th Cir.1976) (majority shareholder may not assert state law claims despite economic injury to him); Erlich v. Glasner, 418 F.2d 226 (9th Cir.1969) (sole shareholder could not maintain an action under 42 U.S.C. Sec. 1983).
 
 
 6
 To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. Von Brimer v. Whirlpool, 536 F.2d at 846. A shareholder must be injured directly and independently of the corporation. Id.; Erlich v. Glasner, 418 F.2d at 228. The method of taxation that SPNV seeks to enjoin does not injure SPNV directly or independently of the corporation.
 
 
 7
 SPNV alleges that it has standing through the Treaty of Friendship, Commerce and Navigation, March 27, 1956, United States-Netherlands, 8 U.S.T. 2043, T.I.A.S. No. 3942. (Treaty). A cause of action may be specifically granted to a shareholder distinct from the corporation by such a provision. E.g., Harmsen v. Smith, 542 F.2d 496, 499-500 (9th Cir.1976). The Treaty provisions relied upon by SPNV do not explicitly give it rights which a domestic shareholder would not have.[1]
 
 
 8
 The Supreme Court recently interpreted the Friendship, Commerce and Navigation treaty between the United States and Japan. Sumitomo Shoji America, Inc. v. Avagliano, 457 U.S. 176, 102 S.Ct. 2374, 72 L.Ed.2d 765 (1982). The Court stated:
 
 
 9
 The Friendship, Commerce and Navigation Treaty between Japan and the United States is but one of a series of similar commercial agreements negotiated after World War II. The primary purpose of the corporation provisions of the Treaties was to give corporations of each signatory legal status in the territory of the other party, and to allow them to conduct business in the other country on a comparable basis with domestic firms.... The Purpose of the treaties was not to give foreign corporations greater rights than domestic companies, but instead to assure them the right to conduct business on an equal basis without suffering discrimination based on their alienage.
 
 
 10
 102 S.Ct. at 2380-81.
 
 
 11
 A domestic corporation holding a majority interest in Shell or Scallop would not have standing in this case as the injury complained of is not direct or individual. The Treaty places SPNV in the same position as a domestic corporation; it has no standing.
 
 RIPENESS
 
 12
 As an alternative ground for its decision, the district court held the controversy was not ripe as it was still at the administrative stage. The district court stated:
 
 
 13
 The present posture of this case at the administrative level, according to SPNV, is as follows. SPNV represents that the Board has demanded information of Scallop Nuclear, but that no notice of proposed assessment has yet been issued to Scallop Nuclear. Auditors for the board have prepared a report proposing that the Board issue such a notice for tax years 1973-76, but the Board has not acted on this proposal. The Board had demanded information of Shell Oil, and issued to Shell Oil notices of proposed assessments for tax years 1967-72. These notices propose assessments of additional taxes, as well as penalties for failure to provide requested information. Shell Oil has formally protested the proposed assessments and has petitioned the Board pursuant to Cal.Rev. & Tax.Code Sec. 25137, requesting that the "unitary business enterprise" for purposes of Shell Oil's tax be reduced in scope to include only Shell Oil and its subsidiaries. The Board has not acted on its protest or petition. The Board is "preparing to issue" to Shell Oil notices of proposed assessments for tax years 1973-76; and these proposed assessments "may" also include proposed penalties for failure to supply requested information.
 
 
 14
 Shell Petroleum N.V. v. Graves, No. C-81-4307, slip op. at 13-14 (N.D.Cal. Aug. 9, 1982). Both Shell and Scallop are in early phases of the administrative proceedings. Once a taxpayer protests an assessment, it is still entitled to a hearing before the Board and an appeal lies to the State Board of Equalization. See Cal.Rev. & Tax.Code Secs. 25665-25667 (West 1979). SPNV argues that the controversy is ripe because the information being demanded of the taxpayers must come from SPNV. The district court did not consider this a sufficient injury to enjoin.
 
 
 15
 Although there is not an administrative exhaustion requirement for 1983 claims, Patsy v. Board of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), the district court based its decision on the policy underlying the Tax Injunction Act. 28 U.S.C. Sec. 1341. This court has stated:
 
 
 16
 Section 1341 provides that "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such State." This statute has its roots in equity practice, the principles of federalism and in recognition of the need of a state to administer its own fiscal operations. This Court has held that Section 1341 also generally bars action for declaratory relief against the assessment or collection of state taxes.
 
 
 17
 Capitol Industries-EMI, Inc. v. Bennett, 681 F.2d 1107, 1112 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982) (citations omitted). Shell and Scallop have plain, speedy, and efficient administrative and state court remedies. The controversy can not yet be considered ripe.
 
 CONCLUSION
 
 18
 SPNV would not have standing to challenge the tax board if it was a domestic corporation. The Treaty appears to do no more than assure that SPNV is on equal footing with domestic corporations. There is equal footing in this case. Furthermore, the policies underlying the tax injunction act compel us to determine that this controversy is not ripe. Therefore, the decision of the district court is affirmed.
 
 
 
 [1]
 The portions of the Treaty which SPNV contends give rise to its claims are Article I(1), Article VI(3), and Article XI(1), (3), and (4). These Articles read as follows:
 Article I(1):
 Each Party shall at all times accord fair and equitable treatment to the nationals and companies of the other Party, and their property, enterprises and other interests.
 Article VI(3):
 Neither Party shall take unreasonable or discriminatory measures that would impair the rights or interests within its territories of nationals and companies of the other Party, whether in their capital, or in their enterprises and the property thereof, or in the skills, arts or technology with which they have supplied.
 Article XI(1):
 Nationals or either Party residing within the territories of the other Party, and nationals and companies of either Party engaged in trade or other gainful pursuit or in scientific, educational, religious or philanthropic activities within the territories of the other Partys, shall not be subject to the payment of taxes, fees or charges imposed upon or applied to income, capital, transactions, activities or any other object, or to requirements with respect to the levy and collection thereof, within the territories of such other Party, more burdensome than those borne by nationals and companies of such other Party.
 Article XI(3):
 Nationals and companies of either Party shall in no case be subject, within the territories of the other Party, to the payment of taxes, fees or charges imposed upon or applied to income, capital, transactions, activities of any other object, or to requirements with respect to the levy and collection thereof, more burdensome than those borne by nationals, residents and companies of any third country.
 Article XI(4):
 In the case of companies and of nonresident nationals of either Party engaged in trade or other gainful pursuit within the territories of the other Party, such other Party shall not impose or apply any tax, fee or charge upon any income, capital or other bases in excess of that reasonably allocable or apportionable to its territories, nor grant deductions and exemptions less than those reasonably allocable or apportionable to its territories. A comparable rule shall apply also in the case of companies organized and operated exclusively for scientific, educational, religious or philanthropic purposes.