**ALCAN ALUMINIUM LIMITED, Plaintiff-Appellant,**

v.

**DEPARTMENT OF REVENUE OF the STATE OF OREGON, Ike Milsap & John E. Butts, Defendants-Appellees.**

**No. 83–1650.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 19, 1983.

Decided Jan. 6, 1984.

Lawrence A. Salibra, II, Alcan Aluminium Corp., Cleveland, Ohio, for plaintiff-appellant.

Michael D. Reynolds, Dept. of Justice, John D. White-Nack, Sp. Asst. Atty. Gen., State of Oregon, Salem, Or., for defendants-appellees.

Before CUDAHY and FLAUM, Circuit Judges, and DUMBAULD, Senior District Judge.*

FLAUM, Circuit Judge.

This appeal raises the issue of whether a foreign parent corporation may maintain an action in federal court for declaratory and injunctive relief to prevent a state from applying the worldwide combined apportionment (WCA) method of taxation to the corporation's domestic subsidiary before any tax has been assessed. Appellant Alcan Aluminium Ltd. alleges that the state of Oregon is seeking to apply WCA to its subsidiary, Alcan Aluminum Corporation (Alcancorp), in violation of the foreign commerce, due process, and supremacy clauses of the United States Constitution. The district court dismissed the complaint, ruling both that appellant lacked standing to challenge the state's action and that there was no justiciable controversy. We agree that the case is not yet ripe for decision,[1] and thus, we affirm.

---

* Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, is sitting by designation.

1. Although the district court phrased its holding in terms of a lack of a "justiciable controversy," we understand the court to have meant that the case was not ripe. The court's analysis focused on the contingent nature of any further action by Oregon, namely, the possibility that Oregon may never assess Alcancorp according to WCA. This concern with the contingency of future events is at the core of the ripeness doctrine. See Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3532 (1975).

### I

Appellant is a Canadian corporation. It and nearly one hundred of its subsidiaries conduct business throughout most of the world, but they operate wholly outside the United States. Appellant indirectly owns 100% of the stock of Alcancorp.[2] Alcancorp is a New York corporation with its principal place of business in Cleveland, Ohio. It and its subsidiaries conduct business within the United States. Alcancorp is qualified to do business in Oregon and conducts certain business operations there.

Appellees are the Oregon Department of Revenue and certain of its employees, operating out of the Department's Chicago office. The state of Oregon taxes corporations doing business within the state according to WCA if the corporation is part of a unitary business.[3] In 1981, appellees began an audit of Alcancorp to determine whether it was part of a unitary business for purposes of Oregon's tax law. Appellees requested and received information from Alcancorp. Although the request was addressed only to Alcancorp, appellant alleges that certain of the information requested is in appellant's exclusive possession. Appel-

lant has thus far refused to disclose this information.[4]

Appellant brought this suit for declaratory and injunctive relief, seeking to prevent appellees from applying WCA in taxing Alcancorp. Appellees have not yet determined whether appellant and Alcancorp are part of a unitary business, nor has any tax been assessed. The district court found that appellant lacked standing to maintain this suit. Appellant's only claimed injury was a diminution of its investment as a shareholder in Alcancorp; such an injury is insufficient to confer standing.[5] The court also ruled that because no tax had been assessed, there was no justiciable controversy.

On appeal, appellant argues that under WCA, Oregon is taxing its income, not Alcancorp's.[6] It argues that the tax places an unconstitutional burden on its activities in foreign commerce. Thus, it has suffered an injury other than as a shareholder. It also argues that having to collect information to meet Oregon's request produces a fiscal and administrative burden on it sufficient to create a justiciable controversy. Appellees

2. Another Canadian corporation, Aluminum Company of Canada, Ltd., is the direct owner of Alcancorp. Appellant, in turn, owns Aluminum Company of Canada, Ltd.

3. Or.Rev.Stat. §§ 314.363, 314.650–675 (1981). Appellees summarize this method as follows:

   [T]he incomes of all companies which are engaged in a unitary business are combined after eliminating intercompany transactions, to determine the net income of the unitary business. This net income is then apportioned according to a formula.

   ... The formula establishes the percentage of a corporation's business activity which is attributable to Oregon by dividing the corporation's Oregon property, payroll and sales by the total property, payroll and sales of all members of the unitary group of which the corporation doing business in Oregon is a part, and then dividing this total by three. This percentage figure is then multiplied times the entire income of the unitary group to determine the income of the corporation doing business in Oregon which is fairly attributable to Oregon.

   Appellees' Brief at 10. Appellant does not dispute that this is how the calculation is made. Appellant does argue that the result of the

calculation does not represent income fairly attributable to Oregon. Appellant's Reply Brief at 2. We express no opinion on this argument.

4. In its Memorandum of Opposition of August 16, 1982, filed with the district court in this action, appellant stated that Oregon had completed its audit and had "received all the information it is going to receive from Plaintiff." Appellant's Appendix at 17.

5. The district court cited as authority two opinions of the Northern District of California: *EMI Ltd. v. Bennett,* 560 F.Supp. 134 (N.D.Cal.1982) and *Shell Petroleum, N.V. v. Graves,* 570 F.Supp. 58 (N.D.Cal.1983), aff'd 709 F.2d 593 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). These opinions relied on the rule that a shareholder does not have standing to complain of an injury to the corporation.

6. Appellant's argument seems to be that the application of WCA in its case results in the taxation of foreign commerce. Appellant, not Alcancorp, engages in foreign commerce and has income from foreign commerce. Thus, Oregon's tax on unitary businesses results in taxing appellant's income.

argue that it is Alcancorp that must pay any tax assessed, and thus appellant has suffered no injury other than that as a shareholder. They also argue that the case is not ripe because the state has not yet determined whether to apply WCA in taxing Alcancorp.

## II

We start by noting that the Tax Injunction Act, 28 U.S.C. § 1341 (1976), is inapplicable to this case. The Act provides, "The district court shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." The Act places similar restrictions on suits for declaratory relief. *California v. Grace Brethren Church,* 457 U.S. 393, 408, 102 S.Ct. 2498, 2508, 73 L.Ed.2d 93 (1982). In the case before us, there is some doubt as to whether appellant has a remedy in the state courts of Oregon. The Oregon tax statutes are ambiguous. The Oregon Attorney General has made an informal statement that a corporation such as appellant has a remedy in state court. However, there has been no formal opinion to that effect. Where there is uncertainty as to the adequacy of a state remedy, the Tax Injunction Act does not apply. *California v. Grace Brethren Church,* 457 U.S. at 414 n. 31, 102 S.Ct. at 2511 n. 31 (citing *Hillsborough v. Cromwell,* 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946)). Thus, the Act does not bar appellant's action. The fact that Alcancorp has a state judicial remedy also does not bar this suit. "A nontaxpayer that has stated a claim with respect to an assessment or collection is entitled to a judicial remedy in which they can participate as a party." *Capitol Industries-EMI, Inc. v. Bennett,* 681 F.2d 1107, 1119 (9th Cir.1982) (citations omitted), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982).

Even though the Tax Injunction Act itself is not applicable, however, we cannot ignore the policies underlying the Act.

"[E]ven where the Tax Injunction Act would not bar federal-court interference in state tax administration, principles of federal equity may nevertheless counsel the withholding of relief." *Rosewell v. LaSalle National Bank,* 450 U.S. 503, 525 n. 33, 101 S.Ct. 1221, 1235 n. 33, 67 L.Ed.2d 464 (1981) (citing *Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 301, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407 (1943)); *see also Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. 100, 110, 102 S.Ct. 177, 183, 70 L.Ed.2d 271 (1981) (legislative history of Act does not suggest congressional intent to limit federal court deference to actions enumerated in Act). This court has stated that "even if the facts of a state tax matter do not technically fit within the language of Section 1341, the federal courts should in their discretion restrain from interfering in the state proceedings." *Huber Pontiac, Inc. v. Whitler,* 585 F.2d 817, 820 (7th Cir.1978).

The purpose of the Act is to limit federal court jurisdiction over the collection of local taxes. *Rosewell v. LaSalle National Bank,* 450 U.S. at 522, 101 S.Ct. at 1233–1234. Federal courts long have been reluctant to interfere with a state's system of raising revenues, for

> [i]t is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers, upon whom the duty is devolved of collecting the taxes, may derange the operations of the government, and thereby cause serious detriment to the public.

*Dows v. City of Chicago,* 78 U.S. (11 Wall) 108, 110, 20 L.Ed. 65 (1870).[7] Congress, in passing the Act, was motivated largely by concerns of comity. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. at 110, 102 S.Ct. at 183. Similarly, federal courts have considered the principle of com-

---

**7.** *See also* the concurring and dissenting opinion of Justice Brennan in *Perez v. Ledesma,* 401 U.S. 82, 127–28 n. 17, 91 S.Ct. 674, 698–699 n. 17, 27 L.Ed.2d 701 (1971).

ity in exercising their discretion in actions for declaratory relief regarding state taxes. *See, e.g., Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). The principle of comity predated the Act and was not restricted by the Act's passage. *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. at 100, 102 S.Ct. at 177. In light of these policies, federal courts have expressed a strong preference that issues of state taxation be litigated in state courts through a suit for refund rather than in federal courts through a suit for declaratory or injunctive relief. *See, e.g., California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982).[8] Thus, although the letter of the Tax Injunction Act does not apply, the principle of comity underlying it militates in favor of a stringent standard of justiciability in cases that threaten to interfere with state taxes.[9]

### III

■ The Declaratory Judgment Act, 28 U.S.C. § 2201 (1976), requires an "actual controversy" for decision. The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 251–52 (7th Cir.1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982). In *Nuclear Engineering,* the court held that a threat of enforcement of state law must present "immediate coercive consequences" or "immediate business costs" to the plaintiffs to be justiciable. 660 F.2d at 252. However, even where a case presents an actual controversy, a court may refuse to grant declaratory relief for prudential reasons. *International Harvester Co. v. Deere & Co.,* 623 F.2d 1207, 1217 (7th Cir.1980).

■ Here, appellant argues that it must produce information requested by Oregon pursuant to the audit and alleges that the costs of its response are immediate. We need not decide whether this is sufficient to

---

**8.** Similarly, there is a strong policy against allowing declaratory or injunctive relief against the assessment or collection of federal taxes. The Declaratory Judgment Act, 28 U.S.C. § 2201 (1976), excepts suits regarding federal taxation. The federal Tax Anti-Injunction Act, 26 U.S.C. § 7421(a) (1976), provides that "[N]o suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax is assessed." The only exception to the literal terms of § 7421 is that preenforcement relief may be granted only upon proof of irreparable injury where "it is clear that under no circumstances could the government ultimately prevail." *Enochs v. Williams Packing & Navigation,* 370 U.S. 1, 7, 82 S.Ct. 1125, 1129, 8 L.Ed.2d 292 (1962). The purpose of this statute is similar to that of the state Tax Injunction Act: "the protection of the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference, 'and to require that the legal right to the disputed sums be determined in a suit for refund.'" *Bob Jones University v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 2045, 40 L.Ed.2d 496 (1974) (quoting *Enochs v. Williams Packing & Navigation,* 370 U.S. at 7, 82 S.Ct. at 1129).

**9.** Whether a case is justiciable is a matter of degree. *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

The idea that state tax cases not governed by the Tax Injunction Act nevertheless must meet a stringent standard of justiciability before federal courts exercise their jurisdiction is not novel. In *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* four members of the Supreme Court concluded that an action for damages for allegedly unconstitutional state tax assessments, brought under 42 U.S.C. § 1983, should be subject to a requirement of exhaustion of administrative remedies, even though § 1983 cases generally are not subject to the requirement. 454 U.S. at 133–38, 102 S.Ct. at 194–197 (Brennan, J., concurring). The concurring opinion states, "[T]he administrative-exhaustion requirement is entirely consonant with the principal purpose of the [Tax Injunction] Act; to provide assurance that federal courts exercise at least the same restraint in dealing with questions of state tax administration as the courts of the State that levied the tax." *Id.* at 137, 102 S.Ct. at 196. Similarly, a stringent standard of ripeness for state tax cases ensures that federal courts will not interfere prematurely with state tax administration.

create an actual controversy, for these costs are not sufficient to overcome the prudential considerations of comity.[10] The request for information was addressed to Alcancorp, not appellant. Furthermore, a mere request for information pursuant to a state tax audit to determine whether a taxation statute is applicable is not sufficient to make this case ripe. A request for information is a routine part of an audit.[11] In this case, appellees may ultimately determine that appellant and Alcancorp are not part of a unitary business. Until a tax is assessed against Alcancorp, this controversy cannot be considered ripe.

 The United States Court of Appeals for the Ninth Circuit, in a case factually similar to the present case, apparently has held that the foreign parent's action is not ripe until a tax has been assessed and the domestic subsidiary has exhausted its state remedies. *Shell Petroleum, N.V. v. Graves,* 709 F.2d 593, 597 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983). In *Shell,* however, the parent's only alleged injury was as a shareholder of its subsidiary. The parent alleged no independent injury as a basis for standing. *Id.* at 595. Thus, the subsidiary's state remedy fully protects the parent's interests. The present case is distinguishable. Appellant has alleged an independent injury as a basis for standing. It claims an unconstitutional burden on its foreign commerce. If appellant's allegations as to its standing are accepted as true, its interests and those of Alcancorp are not identical. *See also Capitol Industries-EMI, Inc. v. Bennett,* 681 F.2d at 1118–19 & n. 30. Thus, Alcancorp's

state remedy does not protect appellant fully. As soon as the tax is assessed against Alcancorp, the threat of injury to appellant will be immediate. Nothing in the Tax Injunction Act requires appellant to wait while Alcancorp pursues its own remedies under Oregon law for its own injury.

## IV

 Appellants have also requested injunctive relief. An injunctive remedy is discretionary and will not be granted unless the controversy is ripe for judicial resolution. *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). The prudential considerations discussed above that require a stringent standard of ripeness for declaratory relief are equally applicable to a suit for an injunction. Thus, the case also is not ripe for injunctive relief.

## V

We express no views as to whether appellant will have standing to challenge appellees' actions if appellees do assess Alcancorp as part of a unitary business including appellant. We also express no views as to the merits of appellant's arguments regarding the constitutionality of WCA.

AFFIRMED.

---

10. The idea that the principle of comity affects the determination of whether an action is brought prematurely also is not novel. Considerations of comity are reflected in the exhaustion of remedies requirement of federal *habeas* practice, *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. at 120–21 n. 4, 102 S.Ct. at 188 n. 4 (Brennan, J., concurring) (citing *Ex Parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886)), and in the doctrine of exhaustion of administrative remedies, *Fair Assessment in Real Estate Ass'n, Inc. v. McNary,* 454 U.S. at 121 n. 5, 102 S.Ct. at 188–189 n. 5 (Brennan, J., concurring).

11. The Canadian government has expressed concern over the administrative and fiscal burdens created by WCA on Canadian companies doing business in the United States. Appellant's Exhibit H. We recognize the seriousness of Canada's position. The concerns of foreign governments, however, are a subject more appropriate for Congress than for the judiciary. We note that Congress is aware of the problems created by WCA. *See State Taxation of Foreign Source Income: Hearing on H.R. 5076 Before the House Committee on Ways & Means,* 96th Cong.2d Sess. (1980).