EMI LIMITED, Plaintiff-Appellant,

v.

William BENNETT, Kenneth Cory, Mary Ann Graves, and Gerald H. Goldberg, Defendants-Appellees.

No. 82–4611.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1984.

Decided July 23, 1984.

Valentine Brookes, San Francisco, Cal., for plaintiff-appellant.

Charles C. Kobayashi, Sacramento, Cal., for defendants-appellees.

Before ANDERSON, SKOPIL, and POOLE, Circuit Judges.

SKOPIL, Circuit Judge:

The district court dismissed this action on the ground that EMI, Limited ("EMI") lacked standing. *EMI Ltd. v. Bennett*, 560 F.Supp. 134, 135–36 (N.D.Cal.1982). We affirm.

FACTS AND PROCEEDINGS BELOW

Capitol Industries-EMI, Inc. ("Capitol"), is a Delaware corporation with its principal place of business in California. Capitol is in the business of recording phonograph records and tapes. Capitol's business is conducted almost exclusively in the United States.

EMI, a United Kingdom corporation, owns the majority of the stock of Capitol. EMI owns a group of subsidiaries, most of which operate outside the United Kingdom. EMI, through its subsidiaries other than Capitol, is engaged in the same business as Capitol, but primarily in markets other than in the United States. In addition, EMI and its foreign subsidiaries, other than Capitol, are engaged in businesses unrelated to the recording industry.

Capitol pays both federal and California state income taxes. Neither EMI nor its subsidiaries, other than Capitol, pay income taxes to the United States or any individual state. However, EMI and its other subsidiaries have paid taxes in their respective home countries.

The Franchise Tax Board, State of California ("FTB"), contends that California law requires a combined tax report from a taxpayer that covers all commonly owned or controlled corporations that are engaged in a "unitary" business. The FTB has determined that Capitol, EMI and other EMI subsidiaries are engaged in a single or "unitary" business to the extent of their "music activities." Therefore, the FTB proposed to assess against Capitol an additional tax liability based on the state's "unitary method" of taxation.

Application of the unitary scheme under California law involves combining the net incomes of Capitol, EMI, and all of EMI's other subsidiaries, derived from the music portion of their businesses. That combined income is then apportioned between California and the rest of the world based on a formula using the California ratio of property, payroll, and sales, to the worldwide figures for the same factors. *See* Cal.Rev. & Tax.Code §§ 25101, and 25128–36.

In the course of the FTB's investigation of Capitol, it demanded that EMI provide certain business records relating to EMI and its subsidiaries. EMI refused. EMI argued that, under the Official Secrets Act of the United Kingdom, some of the information, related to military contracts entered into by EMI and the British government, is not disclosable under the law of the United Kingdom. EMI refused to provide other information on the grounds that it either lacked access to such information, or because California lacks jurisdiction over EMI and its non-United States subsidiaries. The FTB then dropped its demands for information from EMI. It shifted its demand to Capitol, asking Capitol for the same information it had sought from EMI. Capitol claimed it did not have the requested information and that EMI would not provide it the information. The FTB's unitary assessment was therefore made on the basis of estimated figures available from various public sources.

Capitol filed an action in district court against several persons individually and as members of the FTB. Capitol sought injunctive and declaratory relief to prevent the proposed assessment. Capitol argued that unitary treatment of its business and that of EMI and other EMI subsidiaries violated California law and the Foreign Commerce Clause of the United States Constitution, Art. I, Sec. 8, Clause 3.

EMI filed a separate action in federal court against the same defendants and asserting the same claims as Capitol. Additionally, EMI alleged that the proposed assessment on its subsidiary Capitol would negatively affect its stock holdings in Capitol. Both EMI and Capitol also sought relief from the FTB's demand that Capitol provide certain records of EMI and its foreign subsidiaries.

Cross-motions for summary judgment were filed. The district court denied Capitol's and EMI's motions and granted the Board Members' motions on the ground that the Anti-Injunction Act precluded subject matter jurisdiction because a "plain, speedy and efficient" state court remedy existed for the claims asserted by Capitol and EMI. 28 U.S.C. § 1341.

On appeal, this court held that the action by Capitol should be dismissed because Capitol had an adequate remedy under

state law.[1] *Capitol Industries-EMI, Inc. v. Bennett*, 681 F.2d 1107, 1118 (9th Cir.), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 655 (1982). The action brought by EMI, however, was remanded for further proceedings. The administrative procedures and refund suit provided by California law are remedies available only to taxpayers. Since only Capitol, and not EMI, is a taxpayer, EMI has no method under state law to challenge tax assessments. This court held that 28 U.S.C. § 1341 was no bar, but questioned whether EMI had standing to challenge a tax assessment against its subsidiary, Capitol. *Id.* at 1119 n. 3. The court chose not to rule on that issue and remanded to the district court for its consideration.

After remand the defendants moved to dismiss for lack of standing. The district court held that EMI was without standing to challenge the tax against Capitol. *EMI Ltd.*, 560 F.Supp. at 135–36. EMI appealed.

## DISCUSSION

### 1. Standard of Review.

 Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." *Joyner v. Mofford*, 706 F.2d 1523, 1526 (9th Cir.1983) (*quoting Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)), *cert. denied*, — U.S. ——, 104 S.Ct. 509, 78 L.Ed.2d 698 (1983). Because standing is a jurisdictional question, this court reviews *de novo*. *E.g., Societe de Conditionnement v. Hunter Engineering*, 655 F.2d 938, 941 (9th Cir.1981).

### 2. Merits.

 Courts require a plaintiff to have a "personal stake" in the outcome of a case "to warrant *his* invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."

*Joyner*, 706 F.2d at 1526 (*quoting Warth*, 422 U.S. at 498–99, 95 S.Ct. at 2204–05) (emphasis in original). To have such a "personal stake," a plaintiff must allege a "distinct and palpable injury to himself." *Joyner*, 706 F.2d at 1526 (*quoting Warth*, 422 U.S. at 501, 95 S.Ct. at 2206). "[W]hen a plaintiff's standing is brought into issue, the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III [United States Constitution] limitation." *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976).

The essence of EMI's argument is that it is injured by the tax assessed (but not yet collected) against Capitol. As EMI states it, "[t]his case is one to restrain [the FTB] from demanding of EMI [either directly or through Capitol], information it is prohibited by British law from revealing, from lessening the value of EMI's property in United States through the assertion of unconstitutional taxes from Capitol, and from burdening EMI's foreign commerce with the United States."

Despite EMI's attempts to characterize itself as a prime participant, its only real connection to the live controversy is in its status as majority shareholder of Capitol stock. The FTB is making demands for information only from Capitol. If Capitol fails to produce the information because of EMI's recalcitrance the result will be, at worst, either an increase in Capitol's tax liability or a tax penalty. Whether through the imposition on Capitol of taxes or the increase in taxes because of Capitol's failure to produce information, EMI's only possible injury is the diminution in value of its holdings in Capitol.

---

**1.** Some time after the district court's decision, the assessment against Capitol became final. Capitol then appealed to the California State Board of Equalization. The FTB cannot take steps to enforce the collection of the assessed tax while the appeal is pending before the Board of Equalization. At the time of this writing, Capitol's administrative appeal was still pending.

■ Generally, a shareholder does not have standing to redress an injury to the corporation in which it holds stock. *Shell Petroleum, N.V. v. Graves*, 709 F.2d 593, 595 (9th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 537, 78 L.Ed.2d 717 (1983); *Sherman v. British Leyland Motors, Ltd.*, 601 F.2d 429, 439–40 (9th Cir.1979) (sole shareholder had no standing to assert either federal or state law claims); *Von Brimer v. Whirlpool Corp.*, 536 F.2d 838, 846 (9th Cir.1976) (majority shareholder may not assert state law claims despite economic injury to him); *Erlich v. Glasner*, 418 F.2d 226 (9th Cir.1969) (sole shareholder could not maintain an action under 42 U.S.C. § 1983).

> To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation. *Von Brimer v. Whirlpool*, 536 F.2d at 846. A shareholder must be injured directly and independently of the corporation. *Id.; Erlich v. Glasner*, 418 F.2d at 228.

*Graves*, 709 F.2d at 595.

■ This case is controlled by *Graves*. The facts in *Graves* are nearly identical to those presented here. Shell Petroleum, a Netherlands corporation, is the majority shareholder in both Shell Oil and Scallop Holding, Inc., which in turn owns Scallop Nuclear. Both Shell Oil and Scallop Nuclear are Delaware corporations doing business in California. The FTB proposed unitary tax treatment for Shell Oil and Scallop Nuclear and their parent corporations. In the process, the FTB demanded information concerning the worldwide operations of Shell Petroleum from Shell Oil and Scallop Nuclear. Shell Petroleum contested the application of the unitary tax and the demand for information from its subsidiaries. The district court held that Shell Petroleum had no standing, and this court

affirmed. *Graves*, 709 F.2d at 595–96. The court found that the unitary method of taxation did not harm Shell Petroleum directly or independently of the harm to its subsidiaries. It was therefore without standing under the general rule that shareholders are without standing to assert the rights of the corporation in which they have ownership. *Id.*

EMI attempts to distinguish *Graves* on several grounds. First, EMI argues that "the substance of [its] complaint is that it wants its corporate entity observed, and wants the corporate entity of its subsidiary, Capitol, also observed." EMI argues that a similar demand was not a part of the complaint by Shell Petroleum. EMI's argument is without merit. While Shell Petroleum may not have said so in so many words, it is clear that it was objecting to the unitary tax which does, to an extent, blur corporate identities. EMI's argument goes to the legality of California's unitary tax method which, despite the fact it blurs corporate identities, has been recently upheld. *See Container Corp. v. Franchise Tax Board*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983).[2]

The general rule of no standing for stockholders does observe lines of corporate identity and is, in fact, based on the concept of distinct corporate identities. In order for EMI to prevail it would have to argue that the court should observe corporate identities for purposes of its argument against the unitary tax, but ignore corporate identities for purposes of its argument against the general rule of no standing for stockholders. A decision by the court in favor of EMI would be contrary to the cases upholding the unitary tax method and also contrary to the cases establishing

---

2. *Container Corp. v. Franchise Tax Board*, 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983) made clear that the blurring of corporate identities for purposes of unitary taxing was permissible. 103 S.Ct. at 2941. *See also Mobil Oil Corp. v. Commissioner of Taxes*, 445 U.S. 425, 440–41, 100 S.Ct. 1223, 1233–34, 63 L.Ed.2d 510 (1980) (same). It is true that *Container Corp.* is distinguishable from this case in that *Container Corp.*

involved a domestic parent corporation with foreign subsidiaries, while this case involves a foreign parent corporation with domestic (as well as foreign) subsidiaries. While that distinction may make a difference with respect to other questions decided in *Container Corp.*, for purposes of ignoring corporate identities, that distinction makes no difference.

the general rule of no stockholder standing.

■ Second, EMI attempts to distinguish *Graves* by arguing that here, a treaty between the United States and Great Britain gives EMI standing. In *Graves*, Shell Petroleum argued that a treaty between the United States and the Netherlands provided for standing. This court held that it did not. *Graves*, 709 F.2d at 596. EMI argues the treaty between the United States and Great Britain differs significantly from the treaty between the United States and the Netherlands. If EMI's interpretation of the treaty is correct, it might well have standing. A cause of action may be specifically granted to a shareholder distinct from the corporation by a treaty provision. *Graves*, 709 F.2d at 595; *Harmsen v. Smith*, 542 F.2d 496, 499–500 (9th Cir. 1976).

■ The treaty relied upon by EMI does not specifically, or even implicitly, grant special status to stockholders in respect to the corporations in which they have ownership. *See* United States-United Kingdom Income Tax Convention of 1946, 60 Stat. 1377–97 (June 26, 1946). Moreover, the treaty by its explicit terms does not even cover taxes imposed by a state:[3]

### ARTICLE I

(1) The taxes which are the subject of the present Convention are:
 (a) In the United States of America: The Federal income taxes, including surtaxes and excess profits taxes (hereinafter referred to as United States tax)
 (b) In the United Kingdom of Great Britain and Northern Ireland: The income tax (including surtax), the excess profits tax and the national defense contribution (hereinafter referred to as United Kingdom tax).

(2) The present Convention shall also apply to any other taxes of a substantially similar character imposed by either Contracting Party subsequently to the date of signature of the present Convention or by the government of any territory to which the present Convention is extended under Article XXII.

The contracting parties to the tax treaty are the federal governments of the United States and the United Kingdom. Art. XXII referred to in Art. I, Sec. 2, does not include individual states within the meaning of "territory."

EMI makes three other arguments, none of which have merit. It argues that an alien corporation is entitled to the protection of the fifth amendment. That argument has no application in this case. The question is not whether an alien has standing, but whether a stockholder has standing to act for the corporation. EMI also argues that, under international law, "if a country confers rights on a foreign national, it is obligated to provide a judicial tribunal to enforce those rights." Again, the argument does not fit the facts of the case. This country has conferred no special rights on EMI. The nondiscriminatory application of rules of standing eliminate EMI as a plaintiff in this tax matter involving its subsidiary, Capitol.

Finally, EMI argues that unless it has standing, important questions reserved by the Supreme Court in *Container Corp.* will be rendered essentially unreviewable. *Container Corp.* was the mirror image of this case. It involved reaching foreign subsidiaries of a domestic parent corporation, whereas this case involves reaching the foreign parent of domestic subsidiaries. The Court specifically limited its decision to the factual circumstances presented. *Container Corp.*, 103 S.Ct. at 2952 n. 26. EMI is plainly wrong that the questions reserved will never reach the Court unless EMI is granted standing. The factual context presented by this case could reach the

---

**3.** The treaty does mention state taxes in Article XXI, but specifically limits the reference to state taxes for purposes of that section. Article XXI prohibits discrimination in federal, state, or municipal taxation of foreign corporations. There is no claim in this case that the FTB is applying the unitary method of taxation to foreign corporations differently than domestic ones.

Supreme Court the same way that *Container Corp.* did, by appeal through the California courts. Capitol is best suited to assert rights that are distinctly its own.

The district court is AFFIRMED.