GENERAL MOTORS CORPORATION; American National Red Cross; Jasper Ballance; et al., Plaintiffs-Appellees,

v.

CALIFORNIA STATE BOARD OF EQUALIZATION; William M. Bennet; Conway H. Collis; Ernest J. Dronenburg, Jr.; Richard Nevins; Gray Davis*; and Bruce Bunner, Defendants-Appellants.

No. 85–5618.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1986.

Decided April 29, 1987.

* Substituted for Kenneth Cory, pursuant to Fed.    R.App.P. 43(c)(1).

William J. Kilberg, Washington, D.C., for plaintiffs-appellees.

Patti S. Kitching, Los Angeles, Cal., for defendants-appellants.

Benjamin W. Boley, James R. Bieke, William R. Hanlon, Washington, D.C., for amicus curiae.

Before KENNEDY, SKOPIL and ALARCON, Circuit Judges.

KENNEDY, Circuit Judge:

Appellants, the California State Board of Equalization, board members, and various state officials, appeal the district court's grant of summary judgment in favor of appellees, General Motors Corporation and the American National Red Cross. We reverse.

Appellees are fiduciaries of "employee welfare benefit plans" within the meaning of section 3(1) of the Employee Retirement Income and Security Act of 1974 (ERISA), 29 U.S.C. § 1002(1) (1982). They fund the plans, which provide disability and health care benefits, with company assets and excess-risk policies from Metropolitan Life Insurance Company. Under these policies, appellees are responsible for paying all claims up to a trigger point, an aggregate level of claims specified annually, while Metropolitan is responsible for paying all claims above that point.

Appellees adopted the excess risk policies to replace traditional policies under which Metropolitan received larger premiums and paid all claims. It appears that appellees did so to retain use of their funds until claims were actually paid and to reduce premiums tax liability for their insurer.

Appellants administer a tax on "gross premiums ... received" by insurance companies doing business in California. Cal. Const. art. XIII, § 28(c); Cal.Rev. & Tax Code §§ 12201, 12221 (West 1970 & Supp. 1986). In calculating "gross premiums ... received" by Metropolitan, appellants included premiums appellees paid Metropolitan plus benefits appellees paid employees under their plans. As a matter of state law, the California Supreme Court upheld this method of calculation in *Metropolitan Life Ins. Co. v. State Bd. of Equalization*, 32 Cal.3d 649, 652 P.2d 426, 186 Cal.Rptr. 578 (1982).

Appellees' insurance contracts require them to reimburse Metropolitan for premium taxes incurred as a result of their plans. After learning of the California Supreme Court decision, they brought the instant action in federal court, seeking declaratory and injunctive relief. They argued that appellants' interpretation of "gross premiums ... received," though valid as a matter of state law, was preempted by ERISA.[1] The district court granted appellees' motion for summary judgment. It enjoined appellants from calculating "gross premiums ... received" with reference to benefits paid by the plans. *General Motors Corp. v. California State Bd. of Equalization*, 600 F.Supp. 76 (C.D.Cal.1984) (original opinion, amended in unpublished order). This appeal followed.

Ultimately, we must determine whether ERISA preempts a premiums tax assessed against an insurer and calculated with reference to benefits paid by ERISA plans. Before we reach that issue, however, we must resolve various procedural challenges.

■ We first consider whether appellees have standing to bring this action. In order to satisfy the requirements for standing, appellees must allege injury that is "distinct and palpable," *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), and not "abstract," "conjectural," or "hypothetical," *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 103 S.Ct. 1660, 1664–65, 75 L.Ed.2d 675 (1983). The injury must be "fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).

Appellees satisfy these requirements. As a result of the taxation they allege to be unlawful, and their contract with Metropolitan, appellees will have to pay the insurance company substantial sums for which they would otherwise not be liable. Such real economic injuries have long been recognized as sufficient basis for standing. *See Sierra Club v. Morton*, 405 U.S. 727,

---

**1.** The preemption issue played no part in the California Supreme Court case because that case involved the taxable years 1967–69 and ERISA was not enacted until 1974.

733, 92 S.Ct. 1361, 1365, 31 L.Ed.2d 636 (1972). In addition, their injury is directly attributable to appellants' allegedly unlawful taxation, and would be fully redressed were the taxation enjoined. *See Wright,* 468 U.S. at 757–58, 104 S.Ct. at 3327–28 (discussing "fairly traceable" component of standing requirement); *Simon v. Eastern Kentucky Welfare Rights Org.,* 426 U.S. 26, · 45–46, 96 S.Ct. 1917, 1927–28, 48 L.Ed.2d 450 (1976) (discussing "redressibility" component of standing requirement).

This is not a case, moreover, in which appellees seek to assert rights of Metropolitan rather than rights of their own. They do not bring this action as bystanders affected by alleged violations of Metropolitan's rights, but as fiduciaries of employee benefit plans, who seek to vindicate rights ERISA grants in express terms.[2]

The cases on which appellants rely to show that standing is lacking are readily distinguishable. In those cases, either an allegation that the plaintiff's own rights have been violated or an express grant of standing is absent. In *EMI Ltd. v. Bennett,* 738 F.2d 994 (9th Cir.) (*EMI II*), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 508 (1984), we dismissed a parent corporation's action because the parent alleged injury flowing from violations of its subsidiary's rights, not its own. *Id.* at 996–98. *Cf. Alcan Aluminum, Ltd. v. Dep't of Revenue,* 724 F.2d 1294, 1299 (7th Cir.1984) (standing exists where parent alleges violation of its own rights). And in *Fentron Indus. v. Nat'l Shopmen Pension Fund,* 674 F.2d 1300 (9th Cir.1982), we questioned an employer's standing because ERISA does not expressly grant employers the right to sue. *Id.* at 1305 n. 5. In the case before us, in which both the appropriate allegation and the express grant are present, appellees have standing to proceed with their suit.

We next consider whether the Tax Injunction Act bars this action. The Tax Injunction Act, 28 U.S.C. § 1341 (1982), provides that "district courts shall not en-

join, suspend or restrain the assessment, levy or collection of any tax under state law where a plain, speedy and efficient remedy may be had in the courts of such state." *Id.* To obtain the relief they seek, therefore, appellees must show that their suit is not covered by this prohibition.

■ Appellees cannot maintain that ERISA is an exception to the Tax Injunction Act. The Supreme Court left that issue open in *Franchise Tax Bd. v. Constr. Laborers Vacation Trust,* 463 U.S. 1, 20 & n. 21, 103 S.Ct. 2841, 2852 & n. 21, 77 L.Ed.2d 420 (1983), but we resolved it in *Ashton v. Cory,* 780 F.2d 816, 821–22 (9th Cir.1986), which holds that ERISA actions are subject to the Tax Injunction Act.

■ In this case, however, the Tax Injunction Act is inapplicable by its own terms. The Act applies only when a party has a "plain, speedy and efficient" remedy in state court. As appellants concede, appellees have no remedy in state court. Under California law, only the party against whom a tax is assessed, in this case Metropolitan, may challenge the tax. Cal. Const. art. XIII, § 32; Cal.Rev. & Tax Code §§ 13101, 13108 (West 1970 & Supp.1986).

Appellants' contention that Metropolitan's ability to challenge the tax constitutes a "plain, speedy and efficient" remedy for appellees is unpersuasive. It is true that Metropolitan's interests are substantially similar to that of the appellees. *Capitol Industries-EMI, Inc. v. Bennett,* 681 F.2d 1107 (9th Cir.) (*EMI I*), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 932 (1982), squarely holds, however, that a party without state administrative or judicial remedies can maintain a federal action even if a taxpayer with substantially the same interests has state remedies. *Id.* at 1119. The Tax Injunction Act is no bar to appellees' suit.

■ We next consider whether abstention would be proper in this case. The preemption issue is one of federal law, *Marshall v. Chase Manhattan Bank, N.A.,*

---

**2.** These rights are contained in section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) (1982), which allows fiduciaries to bring a civil action to en-

join violations of the Act's provisions, including the preemption provisions at issue.

558 F.2d 680, 683 (2d Cir.1977), and the suit by appellees is one over which the federal courts exercise exclusive jurisdiction, 29 U.S.C. § 1132(e)(1). Under these circumstances, abstention would be inappropriate. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813–20, 96 S.Ct. 1236, 1244–47, 47 L.Ed.2d 483 (1976) (discussing circumstances where abstention is appropriate); *Silberkleit v. Kantrowitz,* 713 F.2d 433, 436 (9th Cir. 1983) (declining to abstain where "exclusively federal claims" are present).

■■■ We last consider whether the eleventh amendment precludes an award of injunctive relief in this case. The eleventh amendment does not bar actions for injunctive relief against individual state officials, but it does bar such actions against the state or its agencies, absent their consent. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam). As to the individual appellants, therefore, the district court's injunction may be permissible; but as to appellant Board, a state agency, the injunction must be vacated and the case dismissed. *See V.O. Motors, Inc. v. California State Bd. of Equalization,* 691 F.2d 871 (9th Cir.1982) (dismissing suit for injunctive relief against appellant Board on eleventh amendment grounds).

■■ Having resolved the procedural matters before us, we address the merits of the case. We must determine whether ERISA preempts a premiums tax assessed against an insurer and calculated with reference to benefits paid by ERISA plans. The district court held that ERISA preempted such a tax. *General Motors,* 600 F.Supp. at 80. We review that holding de novo, *United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), and reverse.

The framework for analysis of ERISA preemption claims is well established. *See, e.g., Moore v. Provident Life & Accident Ins. Co.,* 786 F.2d 922, 926 (9th Cir.1986). The first step in the analysis is to determine whether the state law at issue "relate[s] to" employee benefit plans, thereby invoking ERISA's preemption clause, 29 U.S.C. § 1144(a). *Moore,* 786 F.2d at 926.

The Supreme Court has repeatedly emphasized the broad scope of the preemption clause. *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983); *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981). In its most recent pronouncement on the subject, the Court stated that the phrase "relate[s] to" is to be given "its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Metropolitan,* 105 S.Ct. at 2389 (quoting *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900).

The Court's broad reading of the preemption clause leads us to conclude that the tax at issue "relate[s] to" benefit plans. The tax is computed on the basis of benefits paid by the plans; reference to plan activities in computing the tax is unavoidable. In its broadest sense, therefore, ERISA applies, and further analysis is required.

We recognize that the preemption clause is not all encompassing, *Martori Bros. Distrib. v. James-Massengale,* 781 F.2d 1349, 1356 (9th Cir.1986), and that state laws may affect benefit plans in "too tenuous, remote, or peripheral a manner" to justify preemption, *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. Nevertheless, we conclude that the explicit use of plan payments in calculating the tax satisfies the modest requirements for bringing the clause into play. *Cf. Firestone Tire & Rubber Co. v. Neusser,* 810 F.2d 550 (6th Cir.1987) (municipal income tax, applied without reference to plans, does not invoke preemption clause).

We also recognize that "governmental plans," as defined in ERISA, are not entitled to the protection of the preemption clause. 29 U.S.C. § 1003(b)(1) (1982). The Pension Benefit Guaranty Corporation (PBGC), however, has ruled that the Red Cross plan is not excluded from coverage

as a "governmental plan." The conclusions of the PBGC are entitled to "great deference," *Connolly v. Pension Benefit Guar. Corp.*, 581 F.2d 729, 730 (9th Cir. 1978), *cert. denied*, 440 U.S. 935, 99 S.Ct. 1278, 59 L.Ed.2d 492 (1979), and its rulings must stand unless there are "compelling indications" that they are incorrect, *Paden v. United States Dep't of Labor*, 562 F.2d 470, 473 (7th Cir.1977). No such indications are present here, leading us to conclude that the Red Cross plan is entitled to the protection of the preemption clause.

The second step in the preemption analysis involves the insurance saving clause, which provides that any state law that "regulates insurance, banking, or securities" shall remain in force. 29 U.S.C. § 1144(b)(2)(A). This clause must be construed broadly, with due regard for the states' traditional powers in the field of insurance. *Metropolitan*, 105 S.Ct. at 2389. Such a construction will undoubtedly return to the states much of the authority the preemption clause has taken away, but that result follows from the statutory language, which we are bound to apply. *See id.*

The saving clause must also be construed to cover taxation of insurance. The clause preserves the McCarran-Ferguson Act's reservation of the business of insurance to the states. *Metropolitan*, 105 S.Ct. at 2392 n. 21. McCarran-Ferguson, in turn, preserves the states' ability to "tax and regulate" insurance. *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 218, 99 S.Ct. 1067, 1076, 59 L.Ed.2d 261 (1979). Thus taxation of insurance, no less than regulation, may fall within the saving clause.

Given this background, we hold that the saving clause preserves the tax at issue, for the tax is intimately associated with the business of insurance. It is imposed on insurers, as a result of their participation in the insurance business in California. And it is calculated in terms of premiums, the traditional mode of payment for insurance services.

Concededly, the tax is calculated with reference to benefit payments. The payments, however, are used only as a means of capturing the total cost of the insurance provided, the amount which appellants' premiums tax seeks to reach. *Metropolitan Life Ins. Co. v. State Bd. of Equalization*, 32 Cal.3d 649, 660, 652 P.2d 426, 186 Cal. Rptr. 578 (1982). Total cost has two elements, the net premium and the loading. The net premium is the amount which, invested properly, will yield a fund sufficient to pay expected claims. The loading is the amount added to the net premium to cover the insurer's administrative costs and compensate it for assuming the risk that claims will exceed expected levels. *Allstate Ins. Co. v. State Bd. of Equalization*, 169 Cal. App.2d 165, 168, 336 P.2d 961, 964 (1959). Under a traditional policy, both elements are included in the premium paid the insurer, making that premium an accurate measure of the total cost of the insurance provided.

Here, the premium paid the insurer includes only the loading element, so a method for determining the dollar amount of the net premium element is necessary. As the benefits paid by the plans equal the net premium under a traditional policy, appellants have referred to those payments in calculating the tax. This reference, which is used to measure the cost of insurance provided accurately, does not deprive the tax of the protection of the saving clause, for the incidence of the tax remains on the insurer, not the plans.

Elevating the incidence of the tax over the effects may be somewhat formalistic. It is, nevertheless, a familiar method of analysis in the field of taxation. *See Flint v. Stone Tracy Co.*, 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911) (tax on corporate franchise valid even though effect is to reach income exempt from taxation). Perhaps more importantly, it is the method *Metropolitan* requires us to employ in cases of this sort.

The final step in the preemption analysis requires consideration of the deemer clause, which provides that no benefit plan "shall be deemed to be an insurance company ... or to be engaged in the business of insurance ... for purposes of any law of

any state purporting to regulate insurance companies...." 29 U.S.C. § 1144(b)(2)(B) (1982). The precise scope of this clause remains unclear. At base, however, it appears to prevent states from regulating benefit plans simply because they provide insurance for covered employees. *See Wadsworth v. Whaland*, 562 F.2d 70, 77 (1st Cir.1977), *cert. denied*, 435 U.S. 980, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978); *Eversole v. Metropolitan Life Ins. Co.*, 500 F.Supp. 1162, 1169 (C.D.Cal.1980).

■ The tax at issue does not run afoul of the deemer clause. It is imposed on insurance companies, not benefit plans. It may affect benefit plans, but effects are not determinative. *Metropolitan* so holds. *Metropolitan* left intact a mandated-benefit law that had significant effects on Massachusetts plans. In so doing, it indicated that state laws affecting benefit plans may escape preemption if they fall directly on insurance companies, as the tax at issue does.

*Moore v. Provident Life & Accident Ins. Co.*, 786 F.2d 922 (9th Cir.1986), and *United Food and Commercial Workers v. Pacyga*, 801 F.2d 1157 (9th Cir.1986), are not to the contrary. Both involve insurance policies similar to those in the case before us. However, both also find the saving clause inapplicable, presumably because insurance is not involved in any meaningful sense in either case. *Moore*, 786 F.2d at 927; *Pacyga*, 801 F.2d at 1159. Here, in contrast, the saving clause is fully applicable, leaving the tax in force.

REVERSED.